Glenda **HODGES**, et al., **Plaintiffs,**

v.

**WASHINGTON TENNIS SERVICE INTERNATIONAL, INC., et al., Defendants.**

**Civ. A. No. 94–1712.**

United States District Court, District of Columbia.

Dec. 15, 1994.

Thomas Clarence Harper, Washington, DC, for plaintiffs.

L. Mark Winston, Payne, Negroni & Winston, P.C., Rockville, MD, Thomas Langley McCally, Carr, Goodson & Lee, Washington, DC, for Washington Tennis Service Intern., Inc.

Keith Jay Harrison, King, Pagano & Harrison, Washington, DC, for Renaissance Hotel.

Robert Zimmerman, pro se.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

*Introduction*

This matter comes before the Court on defendant's motion to dismiss. Plaintiffs have filed suit for violations of Title VII, (42 U.S.C. 2000a and 42 U.S.C. 2000e–2), 42 U.S.C. § 1981, and the District of Columbia Human Rights Law. D.C.Code Ann § 1–2511 and § 1–2512 (1992).[1] They have asked

for $100,000 in compensatory damages and $100,000 in punitive damages. Plaintiffs allege that the defendants violated federal and District of Columbia statutes prohibiting employment and public accommodation discrimination because they were both aware of behavior by one of their employees that created a hostile environment and because they failed to take appropriate steps to remedy the situation.

Two of the plaintiffs in this case, Price and Walker were employees of the defendants at TechWorld Fitness and Health Club (TechWorld) at the time of the incidents complained of and are still working there today. The third plaintiff, Hodges, was a member of TechWorld.

■ TechWorld is the only proper defendant remaining in this case. Plaintiffs originally sued Mr. Zimmerman, an employee at TechWorld, and Renaissance Hotels in addition to TechWorld. On September 16, 1994 plaintiffs moved to dismiss Renaissance Hotel as an improper party pursuant to Fed. R.Civ.P. 21. Mr. Zimmerman is not a proper party because neither Title VII, 42 U.S.C. § 1981, nor the District of Columbia Human Rights law creates grounds for a cognizable claim against a co-worker. Employers, however, may be held liable to employees under a theory of *respondeat superior* for the hostile actions of other employees. *See Meritor v. Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986).

Defendant has moved to dismiss plaintiff Hodges' claims on a number of grounds, which include arguing that Title VII's prohibitions against discrimination in public accommodations only allow for injunctive relief. 42 U.S.C. § 2000a *et seq.; see Bray v. RHT, Inc.,* 748 F.Supp. 3, 5 (D.D.C.1990). Plaintiff Hodges has not contested defendant's motion, and her claims are therefore dismissed.

---

**1.** This Circuit has used the same standards as to what constitutes a hostile environment under both Title VII and 42 U.S.C. 1981. *See Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1236 (D.C.Cir.1984) (citing Title VII cases in its discussion of employer liability under 42 U.S.C. § 1981); *see also Hamilton v. Rogers,* 791 F.2d 439, 442 (5th Cir.1986) (holding that proof of

liability for a racially hostile work environment is the same under Title VII and 42 U.S.C. § 1981). The District of Columbia Court of Appeals has looked to Title VII as a source for interpreting the D.C. Human Rights Act. *See American University v. District of Columbia Commission on Human Rights,* 598 A.2d 416, 422 (D.C.1991).

For the reasons stated below defendant WTSI's motion to dismiss all other claims is also granted.

*Background*

On May 25, 1994, plaintiffs Patricia Price and Joyce L. Walker were working at TechWorld when they heard Robert Zimmerman, a co-worker, state loudly "I don't want to see any more fat black people, that's all I get," after looking at the club's appointment book. Ms. Hodges, a club member, who also heard the remark complained to Sharon Chandler, the club manager. Ms. Chandler spoke with Price and Walker, who confirmed that Zimmerman had made the remark. Ms. Chandler then summoned Zimmerman to speak with her. Later that day, upon Ms. Chandler's direction, Zimmerman made some form of an apology to plaintiff Price and the next day he did the same to plaintiff Walker.

On May 31, 1994, plaintiffs' lawyer sent a letter to the president of WTSI requesting a meeting on June 6, 1994 to discuss Zimmerman's statement. Defendants said they needed more time to investigate the incident. On June 6, 1994, defendants fired Zimmerman. Plaintiffs have not alleged any other incident that would have contributed to a hostile work environment by Zimmerman or anyone else at TechWorld, before or after the May 25, 1994 statement.

*Analysis*

■ Title VII prohibits employers from creating a hostile work environment, or from condoning incidents of harassment and abuse that create such an environment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 63, 65–66, 106 S.Ct. 2399, 2403–04, 2404–05, 91 L.Ed.2d 49 (1986). An employer may be held liable for the actions of its employees if the employer knew or should have known about the actions of the employees that caused the hostile environment and if the employer did not take appropriate and timely steps to correct the problem. *See Turner v. Barr*, 811 F.Supp 1, 2 (D.D.C.1993) (Richey, J.) (citing *Juarez v. Ameritech Mobile Com-*

*munications Inc.*, 957 F.2d 317 (7th Cir. 1992)); *see also Bundy v. Jackson*, 641 F.2d 934, 943 (D.C.Cir.1981).

WTSI has moved to dismiss the complaint on two grounds. First, it argues that there was no hostile environment at TechWorld because plaintiffs have alleged no harassing incidents other than the single statement by Mr. Zimmerman. WTSI claims that a single incident *cannot*, as a matter of law create liability under Title VII. Second, WTSI states it is not liable because it took appropriate action in response to Mr. Zimmerman's offensive comment.

■ Plaintiffs really don't dispute the single incident theory as applied in this case. Rather, it is their position that a hostile environment was created during the 12 day period (May 25, 1994 to June 6, 1994) that the offending employee stayed on the job before his firing. Without deciding the single incident theory, the Court finds no sustainable claim against defendant because of the reasonable steps taken by WTSI.[2]

WTSI's so-called 12 days of "inaction" cannot form the basis for the claims asserted by plaintiffs. Ms. Chandler, the supervisor on duty at the time of Zimmerman's statement, took immediate steps to determine what had happened as soon as Ms. Hodges lodged her complaint. She confronted Zimmerman the same day, and as a result, he apologized to both plaintiffs Price and Walker within 24 hours. After further investigation over the short period of 12 days, WTSI took the decisive action of dismissing the offending employee. At oral argument, plaintiff's counsel conceded that at all times prior and subsequent to these 12 days, the environment was "non-hostile". Indeed, there were no further incidents, and plaintiffs continued in the employ of WTSI.

While Zimmerman's statement was admittedly offensive, it was neither threatening nor targeted at the plaintiffs. A more serious pattern or practice of harassment by

---

2. This Court is unwilling to base its decision on defendants' assertion made at argument that under Title VII an employer can *never* be held liable for its indifference to a single incident by its employees. For example, it could hardly be ar-

gued that a cause of action would not stated if an employer took no action after all its white employees had shown up at work *one* day wearing Ku Klux Klan uniforms and menaced the sole black employee.

fellow employees might well have called for a more immediate response.

This case is unlike those where courts have found employers liable for acting slowly and ineffectively in response to actions of their employees that were creating a hostile environment. *See, e.g., Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1275 (7th Cir.1991) (finding employer liable for actions of employees when employer acted slowly in investigating racial incidents and failed to take steps to prevent future occurrences). The law that has developed in the hostile environment area has added much to the interests of minorities in our society. Further development of the law in this area would be adversely affected if we start measuring employers' reaction times in terms of days and possibly hours and minutes. To assess damages of $200,000 or perhaps more against this employer for what took place in this case would be inconsistent with the positive legal concepts that have been developing in this important area of the law. Simply put, in fishermen's parlance, this case is not a "keeper."

This Court finds that defendants are not liable and the case is dismissed.