**John H. MACK, Plaintiff,**

v.

**David M. STRAUSS, Executive Director, Pension Benefit Guaranty Corporation, Defendant.**

**No. Civ.A. 00–1713(ESH).**

United States District Court,
District of Columbia.

March 5, 2001.

Gary H. Simpson, Bethesda, MD, for plaintiff.

Marina U. Braswell, Assist. U.S. Atty., Washington, DC, for defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, plaintiff's Opposition, and defendant's Reply. Having considered the pleadings and the entire record herein, the Court grants defendant's motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiff John Mack is employed by Pension Benefit Guaranty Corporation ("PBGC") as a GS–15 Supervisory Financial Analyst in the Corporate Finance and Negotiations Department ("CFND"). Plaintiff is an insulin dependant diabetic and suffers from end stage renal failure. Plaintiff underwent a combined kidney and pancreas transplant surgery in April 1997, and he then returned to work full time in July 1997. Plaintiff was responsible for the 1997 Financial Statement Closing Process at PBGC. This process involved compiling required forms from financial analysts at CFND and forwarding them to another department by a certain deadline.

The forms were not forwarded on time, and the Controller from the Financial Operations Department, Wayne McKinnon, who is considered to be a "customer" of CFND, sent an e-mail to plaintiff's supervisor, Andrea Schneider, asking that she speak with plaintiff about the missed deadlines.

In November 1997, plaintiff met with his immediate supervisor, Robert Klein. In that meeting, Klein informed plaintiff that he would be receiving an "unsatisfactory" performance rating for Fiscal Year 1997. On December 2, 1997, plaintiff met with Klein and plaintiff's second line supervisor, Schneider. In this meeting Klein and Schneider suggested that plaintiff sign a 120–day extension letter in lieu of immediate receipt of his performance evaluation. Klein and Schneider told plaintiff that if he signed this letter, he would not receive an "unsatisfactory" performance appraisal at that time but would be evaluated for an additional 120 days and then receive a performance appraisal that included an evaluation of his performance during the extension period. Plaintiff declined to sign the extension letter and instead requested his performance appraisal.

On December 22, 1997, plaintiff received his evaluation which contained an "unsatisfactory" performance appraisal in the area of "Communications Skills and Customer Service." On February 2, 1998, plaintiff contacted an Equal Employment Opportunity ("EEO") counselor regarding his "unsatisfactory" performance appraisal. On August 14, 1998, John Seal, PBGC's Chief Management Officer and Director of PBGC's EEO Program, rescinded plaintiff's "unsatisfactory" rating and granted him a rating of "fully effective." Plaintiff filed a formal complaint with PBGC's EEO office on August 17, 1998. On July 19, 2000, plaintiff filed this one-count complaint alleging that defendant discriminated against him on the basis of a perceived physical handicap "by engaging in a course of conduct which included wrongfully issuing [p]laintiff an unsatisfactory rating because of his perceived physical handicap . . . ." (Cmplt.¶ 61.)

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). The mere existence of some factual dispute will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

 The non-moving party's opposition, however, must consist of more than mere allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ' "While summary judgment must be approached with special caution in discrimination cases, . . . a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence." *Calhoun v. Johnson*, 1998 WL 164780 at *3 (D.D.C. March 31, 1998), *aff'd*, 1999 WL 825425 (D.C.Cir. Sept.27, 1999) (citation omitted). In addition, LCvR 7.1(h) provides that an

opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all materials facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include reference to the part of the record relied on to support the statement."

██ Plaintiff's Statement of Material Facts fails each and every one of these requirements. Instead, plaintiff presents his complaint as his Statement of Material Facts, executes an affidavit that states that the Statement "is true and correct of my own personal knowledge" and cites nothing but paragraphs of his complaint to support each paragraph of his Statement of Material Facts. Throughout the Statement of Material Facts, plaintiff repeats statements, without any citation to the record, as to which he could not have personal knowledge, since he was not present during the conversation. These statements constitute hearsay and cannot be considered. *See, e.g.,* Pl.St. ¶¶ 19, 23, 26, 31, 33, 34 and 36.[1] Moreover, contrary to Fed. R.Civ.P. 56(e), plaintiff fails to attach some of the documents that he makes reference to in his affidavit. *See, e.g.,* Pl.St. ¶ 47. Also, plaintiff makes no attempt to provide any references to the record to support his many factual assertions, thereby contravening both Fed.R.Civ.P. 56(e) and LCvR 7.1(h) and ignoring the clear dictate of this Circuit's opinion in *Twist v. Meese,* 854 F.2d 1421 (D.C.Cir.1988), wherein the Court cautioned that the burden is on the parties, not on the court, to "identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and

to distinguish those facts which are disputed from those that are undisputed." *Id.* at 1425." Finally, plaintiff's Statement is riddled with self-serving, conclusory statements as to his supervisors' motivations and argumentative characterizations of their actions. *See, e.g.,* Pl.St. ¶¶ 11, 19, 20, 21, 25, 29, 35 and 44.

Given these glaring deficiencies and plaintiff's blatant failure to comply with the rules, plaintiff's Statement of Material Facts cannot serve to refute any of the specific factual assertions that defendant has proffered. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C.Cir.1996). Accordingly, defendant's Statement of Facts will be treated as conceded, as permitted by LCvR 7.1(h) ("[T]he court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

## II. Exhaustion of Administrative Remedies

██ Defendants move for dismissal on the grounds that plaintiff failed to exhaust his administrative remedies because his formal complaint, filed with the Agency on August 17, 1998, made reference to discrimination based on an actual, not a perceived, disability. As explained more fully below, the Court does not find this distinction to be sufficiently significant as to dismiss the complaint on exhaustion grounds.

██ As in a Title VII action, plaintiff cannot bring claims in a lawsuit that were

---

1. Plaintiff has appended deposition excerpts and affidavits, which apparently have some correlation to his Statement of Material Facts. However, upon careful review, it is clear that in some instances, plaintiff has mischaracterized deposition testimony. For instance, Carter testified at p. 6 of his deposition that Klein solicited comments about Laura Rosenberg. Thus, plaintiff's factual statement at p. 9 of his Opposition is flatly wrong. Similarly, plaintiff mischaracterizes the excerpts of Beardsley's deposition which have been provided and argues inferences based on these excerpts that are simply not supported by the evidence.

not included in his EEO charge. *See Spence v. Straw*, 54 F.3d 196 (3d Cir.1995). This requirement "provides the charged party with notice of the claim and helps 'narrow the issues for prompt adjudication and decision.'" *Christopher v. Billington*, 43 F.Supp.2d 39, 47 (D.D.C.1999) (quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n. 325 (D.C.Cir.1976)). However, because most EEOC charges are articulated by laypersons, courts have granted Title VII plaintiffs significant leeway in fulfilling this requirement. *See, e.g., Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). Therefore, "[a]ll Title VII claims set forth in a complaint are cognizable that are 'like or reasonably related to the allegations of the [EEO] charge and grow out of such allegations'" *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (internal citations omitted)). This requirement is satisfied if (1) there is a reasonable relationship between the allegations in the EEO charge and the civil complaint; and (2) the civil claim can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* With respect to this second prong, the Seventh Circuit in *Cheek* explained that in order to be reasonably related, the claims must have a factual relationship between them, *i.e.*, they must "describe the *same conduct* and implicate the *same individuals.*" *Id.* at 501 (emphasis in original).

Plaintiff's complaint in this action arises out of his receipt of an unsatisfactory performance appraisal in December 1997. His EEO charge contains the same allegation. (Def.Ex.3.) The only difference between his complaint and his EEO charge is that in his administrative complaint plaintiff indicated that the basis for this alleged discrimination was "disability." Here, plaintiff is alleging that the defendant discriminated against him because he was perceived to have a disability. Applying the reasoning set forth in *Cheek*, this Court concludes that the charge and the complaint have a factual relationship because they allege that the same individuals engaged in the same conduct, and thus, they are sufficiently related.

In response, defendant contends that plaintiff's complaint cannot reasonably be expected to grow out of an EEOC investigation of a charge based on actual disability discrimination. The Court disagrees. In his EEO complaint, plaintiff specifically mentioned the unsatisfactory performance evaluation which forms the basis for his claim here. Therefore, this Court cannot accept defendant's argument that the "EEO investigation process would have been very different had plaintiff charged disability discrimination based on perceived disability." (Def.Mot. at 6.) The EEO investigation of plaintiff's performance evaluation and the motivation behind it would surely encompass an investigation of any alleged discriminatory motives of plaintiff's supervisors, whether they were based on an actual disability or merely a perceived disability. Thus, plaintiff's complaint will not be dismissed on the grounds of failure to exhaust his administrative remedies.

**III. Disparate Treatment Claim**

In order to state a prima facie case for disparate treatment, plaintiff must show: (1) he was a member of a protected group, (2) an adverse personnel action was taken against him, and (3) similarly situated, non-protected persons did not suffer such adverse actions. *Douglas v. Pierce*, 707 F.Supp. 567, 571 (D.D.C.1988), *aff'd sub nom. Douglas v. Kemp*, 906 F.2d 783, 1990 WL 93368 (D.C.Cir.1990) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

## A. Member of a Protected Group

The Rehabilitation Act protects individuals with a disability, defined as someone who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g). In the present case, plaintiff contends that defendant regarded him as having an impairment which substantially limits one or more of his major life activities. Under this theory, plaintiff must show that: (1) he was perceived to have a physical or mental impairment, and (2) the impairment was perceived to substantially limit one or more of his major life activities. *Siragy v. Georgetown Univ.*, 1999 WL 767831, *4 (D.D.C. Aug.20, 1999) (citations omitted). Given the undisputed facts in this case, plaintiff cannot, as a matter of law, satisfy either requirement.

As to the first prong, plaintiff fails to offer any competent evidence that he was perceived to have a physical or mental impairment. Instead, he cites statements from the affidavits of two supervisors. (Opp. at 19–20.) The first by Andrea Schneider is as follows: "I assumed that after his transplant surgery the Complainant needed to very carefully control his stress level. The complainant didn't tell me that, but I knew when he came back that he shouldn't be stressed, not because he told me that, but because I just figured that would be the case." (Pl.Ex. 8 (Schneider Aff. at 6).) This statement does nothing more than show that Schneider was concerned for plaintiff's health. It does not constitute evidence that Schneider believed that plaintiff was unable to perform his job or that he was impaired in any major life function. Her concern for plaintiff's health does not es-

tablish that she regarded plaintiff as disabled. *See Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 12–13 (D.D.C.2000). The second statement cited by plaintiff is from the affidavit of Robert Klein, plaintiff's primary supervisor. Klein stated that "[d]uring the period of time that the Complainant was out sick and prior to that time when he was ill, we made a conscious effort to assign him people who have more seniority and didn't need as much direct supervision as the people that we assigned to [plaintiff's colleague]." (Pl.Ex. 7 (Klein Aff. at 7).) "An employer's attempts to accommodate an employee's concerns and perceived needs do not establish that the employer regarded the employee as having a disability." *Weigert*, 120 F.Supp.2d at 12 (citation omitted). Moreover, an employee is not regarded as disabled "merely because an employer acts in response to restrictions imposed by an employee's physician." *Id.* at 13.

As to the second prong, plaintiff must show that the defendant considered his impairment to foreclose "not simply a particular job, but the type of employment generally involved." *Weigert*, 120 F.Supp.2d at 12 (D.D.C.2000) (citations and quotation marks omitted). It is not enough that the employer erroneously believes that the employee has an impairment, it must also "believe that this impairment substantially limits h[is] major life activities." *Id.* at 13. Despite this requirement, plaintiff presents no evidence that his supervisors regarded him as unable to perform a broad range of jobs because of his illnesses. On the contrary, the evidence shows that plaintiff worked full-time and was given additional work and responsibilities to perform, and there is no evidence that plaintiff was perceived as being substantially limited in the per-

formance of any major life activities.[2]

■ In short, plaintiff cannot establish membership in a protected group,[3] and therefore, he cannot, as a matter of law, satisfy the first requirement of a prima facie case.

### B. Adverse Personnel Actions

■ Even assuming arguendo that plaintiff could make a prima facie showing of membership in a protected group, his claim must fail because he cannot demonstrate that an adverse personnel action was taken against him. To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment." *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (citation

omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

■ In an attempt to circumvent the holding in *Brown,* plaintiff argues that any kind of personnel decision "regardless of whether or not that discrimination has an effect on other, arguably more important personnel decisions" can give rise to a discrimination claim. (Opp. at 22 (citing *Palmer v. Shultz,* 815 F.2d 84, 97 (D.C.Cir. 1987))). This is not the law. In *Brown v. Brody* the Circuit Court of Appeals distinguished *Palmer,* finding that plaintiffs who allege personnel actions without tangible economic effect can only maintain a hostile work environment claim where the work atmosphere is so polluted with discrimination as to destroy the emotional and psychological stability of minority group work-

**2.** "Major life activities" include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i).

**3.** While plaintiff states that "[t]he thrust of [p]laintiff's complaint is not that the [d]efendant failed to accommodate him, but that [p]laintiff suffered disparate treatment because of his protected status," plaintiff also alleges that defendant ignored requests for accommodation and failed to engage in the statutorily required process for addressing accommodation requests. (Opp. at 13.) It is unclear whether plaintiff intends to bring this as a separate claim. It is doubtful that plaintiff can even claim failure to accommodate given its logical inconsistency with a claim that he was regarded as disabled. *Webber v. Strippit, Inc.,* 186 F.3d 907, 917 (8th Cir. 1999), *cert. denied,* 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000) ("[W]e hold that

'regarded as' disabled plaintiffs are not entitled to reasonable accommodations"); *see also Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 196 (3d Cir.1999) ("[I]t seems odd to give an impaired but not disabled person a windfall because of her employer's erroneous perception of disability, when other impaired but not disabled people are not entitled to an accommodation."). At any rate, even if plaintiff could bring such a claim for failure to accommodate a perceived disability, it must fail. First, plaintiff did not bring a timely complaint of failure to accommodate at the administrative level. (*See* Def.Ex. 3.) Moreover, plaintiff has also failed to establish that he requested an accommodation that the defendant failed to provide, for the undisputed evidence shows that an EEO manager discussed plaintiff's possible need for accommodation with him and that plaintiff ultimately informed her that he did not require any accommodation. (Def.Ex.10.)

ers. *Brody*, 199 F.3d at 454. Plaintiff has not brought a hostile work environment claim, and therefore, his reliance on *Palmer* is misplaced. While it is true, as plaintiff contends, that no particular type of personnel action is automatically excluded from serving as the basis for a Title VII claim, *Cones v. Shalala*, 199 F.3d 512 (D.C.Cir.2000), *Passer v. American Chemical Society*, 935 F.2d 322 (D.C.Cir.1991), it is also true that not all personnel actions are sufficient to give rise to a discrimination claim. *Brody*, 199 F.3d at 453. The Court in *Brody* makes clear that Title VII plaintiffs must demonstrate that an allegedly adverse personnel action had a tangible impact on the terms and conditions of a plaintiff's employment. *Id.* at 456. The Court also noted that this requirement is consistent with the holdings in *Palmer* and *Passer*. *Id.* at 454–55. Similarly, Judge Tatel's opinion in *Cones* is consistent with the requirements set forth in *Brody*. In fact, Judge Tatel cites *Brody* as holding that, " 'while no particular type of personnel action [is] automatically excluded from serving as the basis of a cause of action' under Title VII," the plaintiff must still demonstrate that he was aggrieved by the action. *Cones*, 199 F.3d at 521 (quoting *Brody*, 199 F.3d at 455). Therefore, plaintiff's argument that every type of personnel action may serve as a basis for a Title VII claim is simply wrong.[4]

▮▮▮▮ Plaintiff alleges that the negative performance review he received on December 22, 1997 constitutes an adverse personnel action. However, the Court has held that "[a] reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action." *Childers v. Slater*, 44 F.Supp.2d 8, 20 (D.D.C.1999).

*See also Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996) ("There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action. . . . [Plaintiff] has not identified, nor have we discovered, a single case where adverse performance ratings alone were found to constitute adverse action."). Therefore, plaintiff bears the burden of showing that his negative performance review had a tangible impact on the terms and conditions of his employment. "[T]he touchstone in determining whether an employment decision implicates the terms, conditions, or privileges of employment is whether the plaintiff has suffered a materially adverse action that undermines h[is] ability to perform h[is] job satisfactorily or threatens h[is] prospects of future employment." *Crenshaw v. Georgetown Univ.*, 23 F.Supp.2d 11, 17 (D.D.C.1998), *aff'd without op.*, 194 F.3d 173, 1999 WL 730808 (D.C.Cir.1999).

Plaintiff alleges in his complaint and his affidavit that an unsatisfactory performance rating "was the first step in the removal of an employee from his position," that it would preclude him "from receiving awards and other benefits," and it would "negate any opportunity that Mr. Mack would have to seek other positions or transfer to another department." (Cmplt. ¶ 33; Pl.St. ¶ 27.) Again, plaintiff has failed to provide any evidence to support this assertion, nor has he presented evidence that he was in fact denied any awards, benefits, transfers, or promotions. Without a shred of evidence to support a finding of tangible negative effects from this performance evaluation, the Court cannot conclude that the evaluation constitutes an adverse personnel action. *See*

---

4. Plaintiff's extensive discussion of retaliation cases in his Opposition at pp. 17 and 25–26 does nothing to advance his case, since there is no retaliation claim here, nor could there be such a claim given the absence of any protected activity.

*Brown v. Bentsen*, 921 F.Supp. 1, 2 (D.D.C.1995) ("The fact that plaintiff received lower performance evaluations than she thought that she deserved does not necessarily constitute adverse action sufficient to make out a prima facie case. Plaintiff did not point to any negative consequences that flowed from the allegedly low performance evaluations.").

■ Moreover, there can be no claim in this case that the negative performance evaluation constituted an adverse action given the undisputed evidence that the evaluation was rescinded and changed to a "fully effective" performance rating. (Cmplt. ¶ 56; Pl.St. ¶ 50.)[5] In addition, all narrative was eliminated from the evaluation (Def.St.¶ 19), and plaintiff does not argue that the "fully effective" performance review will have any effect on his future job opportunities, awards or other benefits. Given these undisputed facts, it cannot be argued that a negative performance evaluation which was subsequently deleted from plaintiff's record could have any negative impact on the terms and conditions of his employment or future job prospects.[6] Accordingly, having failed to provide any evidence of material adverse consequences resulting from the temporary negative performance evaluation, plaintiff cannot establish that it was an adverse action.

Plaintiff also alleges that his workload was increased following his return from transplant surgery, that he did not receive his evaluation on time, that he was told if he did not agree to a 120–day extension of his evaluation it would be a "battle royal" and "it would not be a pretty picture," that he was "investigated" by management and a subordinate was asked to write a critical memorandum, that he was isolated and refused support staff, and that he was treated in a hostile and threatening manner. (Opp. at 28–30.) As an initial matter, these claims are time-barred because plaintiff did not seek EEO counseling regarding these actions within 45 days. 29 C.F.R. 1614.105(a)(1). Moreover, some of these allegations lack any record support, or in other instances, defendant's record citations flatly contradict the allegations. (*See* Reply at 16–21.) Finally, even if one considers plaintiff's unsupported characterization of these events, they would not rise to the level of adverse actions within the meaning of *Brody*, because these actions did not constitute " 'a significant change in employment status.' " *Brody*, 199 F.3d at 456 (quoting *Burlington Indus.*, 524 U.S. at 761, 118 S.Ct. 2257).

■ Plaintiff's allegedly increased workload does not constitute an actionable injury because it was not accompanied by some other adverse change in the terms, conditions or privileges of employment. *See Brody*, 199 F.3d at 457 (holding that lateral transfer or the denial thereof, without more, does not constitute an adverse employment action); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997) ("changes in assignments

---

5. Significantly, plaintiff completely fails to mention the recission of his unsatisfactory evaluation in the portion of his Opposition which relates to whether he suffered an adverse action.

6. In an attempt to salvage this claim, plaintiff contends that the negative performance evaluation caused damage to his reputation. However, even "false accusations without negative employment consequences are not employ-

ment decisions actionable under Title VII." *Childers*, 44 F.Supp.2d at 20. Furthermore, public humiliation or loss of reputation alone does not constitute an adverse employment action. *See Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989); *Probst v. Reno*, 2000 WL 1372872 (N.D.Ill. Sept.22, 2000); *Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 535 (N.D.N.Y. 1995), *aff'd*, 108 F.3d 462 (2d Cir.1997).

and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"). "Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action." *Childers v. Slater*, 44 F.Supp.2d 8, 19 (D.D.C.1999). The Court also must conclude that plaintiff's delayed evaluation is not an adverse action because plaintiff has failed to demonstrate that this delay had any tangible impact on his employment.

■ Hostile and threatening treatment can only constitute an actionable adverse action if the treatment is so severe and pervasive as to create a hostile work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plaintiff has not made a hostile work environment claim here and has not presented sufficient evidence to demonstrate that the hostile treatment was so severe and pervasive as to impact the terms and conditions of his employment. Similarly, mere investigations by plaintiff's employer cannot constitute an adverse action because they have no adverse effect on plaintiff's employment. *See Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir.1996) (holding that charges of wrongdoing in workplace alone cannot be adverse actions because "if the charges were ultimately dismissed, [the plaintiff] would not have suffered any adverse effect from them."). Plaintiff has not demonstrated that the investigation by management resulted in any adverse action against him. Finally, the fact that plaintiff believes he was isolated does not constitute a materially adverse consequence or disadvantage in the terms and conditions of his employment so as to establish an adverse personnel action. *See Williams v. City of Kansas City*, 223 F.3d 749, 754 (8th Cir. 2000) ("[Defendant's] silent treatment [of

plaintiff] is at most ostracism, which does not rise to the level of an actionable adverse employment action."); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir.1996) ("[M]ere ostracism in the workplace is not enough to show an adverse employment decision.").

## C. Similarly Situated Persons Not Impacted by Adverse Actions

■ For the third prong of a prima facie case, plaintiff must show that other similarly situated employees, not members of his protected class, did not suffer similar adverse actions, thereby giving rise to a reasonable inference of unlawful discrimination. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999). In order to make such a comparison, plaintiff must show that the individuals with whom he seeks to compare his treatment "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Phillips v. Holladay Property Servs., Inc.*, 937 F.Supp. 32, 37 (D.D.C.1996), *aff'd without op.*, 1997 WL 411695 (D.C.Cir. June 19, 1997).

Plaintiff seeks to compare his treatment to the treatment of Klein, the Deputy Director, Laura Rosenberg, the other supervisory analyst, and the five staff analysts in his group. Plaintiff contends that he was the only individual involved in the closing process to receive an "unsatisfactory" performance review, while his subordinates received "outstanding" evaluations. The five staff members in plaintiff's group are not similarly situated because they are plaintiff's subordinates, and by definition, they do not deal with the same supervisor and are not subject to the same standards as plaintiff. Plaintiff was the department

coordinator for the financial statement closing process, and therefore, he had significantly more responsibilities than the five members of his group. Nor is plaintiff similarly situated to Klein, his supervisor, because there is no evidence that Klein "dealt with the same supervisor, [was] subject to the same standards, and ... engaged in the same conduct" as plaintiff without any differentiating circumstances. *Phillips*, 937 F.Supp. at 37.

Plaintiff also seeks to compare his treatment with that of the other grade 15 supervisor, Laura Rosenberg. While both plaintiff and Rosenberg reported to the same supervisor, they did not have the same responsibilities with respect to the closing process and therefore they cannot be deemed similarly situated with respect to their performance evaluations. Plaintiff maintained complete responsibility for the 1997 closing process and all the associated administrative duties. (Def.St. ¶¶ 9, 12; Def.Ex. 5 (Mack Dep. at 76, 85).) Plaintiff testified that Rosenberg did not deal on a day-to-day basis with the people involved in the process, and while she provided some technical input, she had no administrative duties. (Def.St. ¶ 10; Def.Ex. 5 (Mack Dep. at 106).) The reason stated in plaintiff's evaluation for the "unsatisfactory" rating is that plaintiff did not fulfill his responsibility as a supervisor to inform management if the closing process situation and delays were getting "out of control." (DefEx. 11; *see also* Pl.Ex. 7 (Klein Aff. at 3).) While there may well have been problems beyond plaintiff's control, Klein's complaint was that plaintiff did not inform Klein or Schneider of the magnitude of the problems so that they could take appropriate action, and he instead learned about the problems when an "important customer" complained. (*Id.*)

Plaintiff has not cited to any evidence that Rosenberg, the staff analysts, or anyone else had the same level of responsibility with respect to the closing process as he had or that they failed to fulfill their responsibility to the same extent as he had. Therefore, none of these individuals was similarly situated so that their receipt of more favorable evaluations does not give rise to an inference of discrimination.[7]

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff cannot establish any element of a prima facie case of disparate treatment on the basis of a perceived disability. Accordingly, judgment is entered for the defendant. A separate Order accompanies this Opinion.

7. Given the Court's conclusion that plaintiff cannot establish a prima facie case, it need not address whether defendants' reasons for the unsatisfactory evaluation were pretextual.