Jerry BUNYON, Plaintiff,

v.

William J. HENDERSON, Postmaster General, U.S. Postal Service, Defendant.

No. Civ.A. 01–242(JMF).

United States District Court, District of Columbia.

June 26, 2002.

Jerry N. Bunyon, Suitland, MD, Pro se.

Mary Jane Rieser, Stacy M. Ludwig, Stratton C. Strand, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter has been referred to me by Judge Urbina for all purposes pursuant to

LCvR 73.1. I will grant *Defendant's Motion for Summary Judgment* [# 18].

## BACKGROUND

Plaintiff Jerry N. Bunyon ("Bunyon") brings an action alleging employment discrimination based on Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e, *et seq.* (1994), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101, *et seq.* (1995), and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C.A. § 701 *et seq.* (1999).

Bunyon, an African–American male, began working at the United States Postal Service in Washington, D.C. in 1973 as a postal police officer ("PPO"). Affidavit of plaintiff, Jerry Bunyon, at ¶ 2 (hereafter "Aff.") In this capacity, plaintiff carried a firearm and was authorized to make arrests. Deposition of Jerry Bunyon at 9 (hereafter "Dep.") His primary duty entailed screening visitors to the post office. Dep. at 16; Aff. ¶ 3. Furthermore, although such incidents are rare, PPO's have the authority to respond to burglaries and intervene in disturbances. Dep. at 15. Plaintiff testified that he made about three arrests and responded to "a lot" of alarms during his 29 years on PPO duty. *Id.* at 16.

Plaintiff is, by his own admission, obese; he weighs 410 pounds. Aff. ¶ 3. On January 28, 1998, Bunyon was ordered through a form letter by Captain Thomas LaFond ("LaFond") to undergo a Fitness for Duty ("FFD") examination. Compl. ¶ 8. LaFond was apparently concerned that plaintiff could not perform all of his duties because of his weight problems. Declaration of Thomas J. LaFond ¶ 3. The FFD took place on February 11, 1998, and plain-

tiff was found fit for duty and returned to work. In a formal EEO complaint filed on May 19, 1998, Bunyon claimed that he was humiliated and embarrassed by having to subject himself to the FFD. Plaintiff alleges that other similarly situated employees who are not African–American were not sent for an FFD.

Plaintiff further alleges that defendant retaliated against him for his May 1998 EEO complaint. The alleged retaliation occurred on July 30, 1998, when Bunyon, a union shop steward, met with the responding official named in his complaint, LaFond, to discuss a union grievance. The grievance did not concern plaintiff individually but rather related to changes LaFond had made regarding the PPOs' shift times and duty sites. Bunyon alleges that LaFond became irate during this meeting, directed a racial epithet at plaintiff, knocked some papers off his desk, and approached plaintiff in a threatening manner. Compl. ¶ 10. Other police officers intervened and escorted a very distraught Bunyon out of the office. *Id.* Following the incident, plaintiff was so disturbed that he sought the care of a mental health counselor and psychiatrist. Aff. ¶ 10. When plaintiff returned in late 1998, LaFond had been transferred to another office. Dep. at 150. Since this time, plaintiff has remained a full-time employee of the Postal Service, although he is no longer serving as a PPO.[1]

## ANALYSIS

Bunyon alleges discrimination based upon both his race and his obesity. Plaintiff states four separate claims: (1) racial discrimination (disparate treatment) in being sent for an FFD; (2) disability dis-

---

1. Plaintiff does not challenge this subsequent change to his new position. Bunyon Deposition at 140.

crimination (disparate treatment) under the Rehabilitation Act in being sent for an FFD; (3) hostile work environment based on the LaFond incident; and (4) retaliation based on plaintiff's May 1998 EEOC complaint.

All four of plaintiff's claims require some showing that defendant took some action against him that was significant enough to support a *prima facie* discrimination claim. Both disparate-treatment and retaliation Title VII and Rehabilitation Act claims require a showing of an "adverse employment action." *Mack v. Strauss*, 134 F.Supp.2d 103, 109 (D.D.C.2001) (requiring an adverse employment action in a disparate-treatment Rehabilitation Act claim), *aff'd, without opinion* 2001 WL 1286263 (D.C.Cir. Sept.28, 2001); *Childers v. Slater*, 44 F.Supp.2d 8, 18 (D.D.C.1999), *vacated in part on other grounds*, 197 F.R.D. 185, 191 (D.D.C.2000). *See Brown v. Brody*, 199 F.3d 446, 452–55 (D.C.Cir.1999) (adverse employment action required in Title VII retaliation claim). Furthermore, to prevail on a hostile work environment claim, a plaintiff must show a workplace permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In general, an adverse employment action is a diminution in pay or benefits or an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brown*, 199 F.3d at 457. *See also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 .S.Ct. 2257, 141 L.Ed.2d 633 (1998). The harm suffered may not be subjective, but must constitute an "objectively tangible harm." *Russell v. Principi*, 257 F.3d 815, 818 (D.C.Cir.2001). In short, "the actions must engender some negative consequences with respect to the plaintiff's employment." *Childers*, 44 F.Supp.2d at 19.

■ Plaintiff identifies two adverse employment actions taken against him. First, he points to a warning included in the form letter ordering him to undergo the FFD. In particular, the letter noted that "failure to adhere to these instructions could result in disciplinary action." Defts.Mot. for Summary Judgment, Ex. C. Plaintiff contends that the mere threat of disciplinary action constitutes an adverse employment action, as he "labored under the duress of possible disciplinary action when he received the request for a Fitness for Duty." Memorandum of Points & Authorities in Support of Plaintiff's Opposition to the Defendant's Motion for Summary Judgment at 5. I need waste little time dispensing with this argument, as it is a quintessentially subjective harm. A perfunctory and boilerplate warning of possible disciplinary action certainly fails to rise to the level of an employment action, let alone an adverse one.

■ Plaintiff further contends that the July 30, 1998 shouting incident with LaFond was an adverse employment action because it was so "severe" that if affected the terms and conditions of plaintiff's employment. But, plaintiff does not cite any duty that he was given or refused, promotion denied, or raise withheld, as a result of the incident. Except in the most extraordinary cases, a single verbal dispute with an employer does not, in and of itself, constitute an adverse employment action. In two similar cases, this court has held that "merely being yelled at by your supervisor does not rise to the level of an adverse employment action." *Colbert v. Chao*, 2001 WL 710114 (D.D.C.2001); *Russ v. Van Scoyoc Assoc., Inc.*, 122 F.Supp.2d 29, 32 (D.D.C.2000).

 Nor can LaFond's actions support a hostile work environment claim, for they were not sufficiently severe or pervasive to alter plaintiff's conditions of employment. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. As this Circuit recently noted in *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C.Cir.2002): "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment."[2] LaFond's alleged racial epithet, and his anger, while certainly odious and hostile, did not create a hostile work environment.

Because plaintiff cannot identify any adverse employment action, it is not necessary to address defendant's other arguments as to why summary judgment is appropriate.

## CONCLUSION

Even reading plaintiff's complaint in a most favorable light, as required under Fed.R.Civ.P. 56, I conclude that all of his claims must fail as a matter of law. I shall therefore dismiss this action with prejudice. A separate order and final judgment accompany this opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby

**ORDERED** that *Defendant's Motion for Summary Judgment* [# 18] is **GRANTED**.

**SO ORDERED.**

## FINAL JUDGMENT

The motion of defendant William J. Henderson for summary judgment having been granted, **IT IS ORDERED THAT** plaintiff take nothing, that the action be dismissed on its merits and that the parties bear their own costs of this action.

---

**2.** To be clear, courts have held that a single incident could in theory be sufficiently severe so as to create a hostile work environment. *See Hodges v. Washington Tennis Service Intern., Inc.*, 870 F.Supp. 386, 388 n. 2 (D.D.C. 1994); *Raymond v. U.S. Capitol Police Bd.*, 157 F.Supp.2d 50, 58 n. 5 (D.D.C.2001). But the July 30, 1998 incident in this case does not come close to meeting the level of severity envisioned in these cases.