Lawrence C. CARTER, Plaintiff,

v.

Federico PENA, Secretary, U.S.
Department of Energy,
Defendant.

No. Civ.A. 95–1047 (RCL).

United States District Court,
District of Columbia.

Oct. 23, 1997.

Gary Thomas Brown, Gary T. Brown & Associates, Washington, DC, for Plaintiff.

Suzanne Claire Nyland, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendant's motion for summary judgment on the discrimination claims of plaintiff Lawrence Carter. Carter filed suit against Federico Pena, Secretary of the United States Department of Energy, alleging a discriminatory failure to promote Carter due to his race, previous EEO activity, and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act of 1967, 28 U.S.C. § 621 et seq. Upon consideration of the written submissions of the parties, oral arguments, and the relevant law, defendant's motion for summary judgment is granted.

## I. *Background*

Plaintiff Lawrence Carter is an African American male over the age of forty employed by the United States Department of Energy ("DOE") as a GS 2001–12 General Supply Specialist. He holds two Masters of Science degrees-one in Administration and one in Contract and Acquisition Management and has been an employee of the DOE since 1989. Moreover, Carter has over thirty-two years of service in the government, with twenty years in the military and twelve years as a civil servant.

Currently, Carter's position as a General Supply Specialist is part of the "2001" job series at the DOE. Between 1993 and 1995, Carter submitted several applications in response to vacancy announcements for positions in the "1102" job series posted by the Department but was not selected to fill any of the vacancies for which he applied. Carter contends that his failure to obtain one of the advertised positions is a result of the "discrimination and perverted personnel practices that exist within the Office of Personnel, as well as the Office of Procurement" at the DOE. Pl.'s Supp. Opp. to Summ. J. at 2. Based on these contentions, Carter filed suit alleging that the DOE engaged in discrimination based on race and retaliation for previous EEO activity, in violation of Title VII and discrimination based on age, in violation of the ADEA. Defendant has moved for summary judgment on these claims.

The employment decisions made by the DOE which affected Carter can be divided into two separate categories: (1) cancellations of vacancy announcements for which Carter had applied and (2) DOE selections of other applicants to fill positions for which Carter had applied but was subsequently rejected. Turning to the first category, Carter submitted an application to fill one of four vacancy announcements in the DOE which were all subsequently canceled by the Department prior to the selection of an individual to fill these vacancies. During 1993, Carter applied for the position of Procurement Analyst, GS–1102–13, advertised in Vacancy Announcement Number 93–PR–049. This vacancy announcement was canceled "per management" prior to being filled by DOE officials. In fact, this cancellation occurred before any applicants were screened by a department panel or interviewed by a selecting official.

On August 27, 1993, Carter was interviewed for a different position within the DOE in conjunction with his application for

the position of Contract Specialist, GS–1102–11/12, as advertised in Vacancy Announcement Number 92–PR–203/EF–0259. The interviewer rated Carter a "one" out of a possible "ten" and the exchange between the interviewer and Carter during the interview is the subject of some dispute. Nonetheless, the DOE canceled this vacancy citing budgetary limitations.

On November 21, 1994, Carter applied for three positions that were advertised in Vacancy Announcement Number 94–PR–064/065/066, Contract Specialist, GS–01102–13. Prior to submitting this application, Carter requested that the Office of Personnel Management ("OPM") evaluate his employment qualifications. Carter contends that the OPM certified him as qualified and eligible for a GS–01102 position at either Grade 12 or 13, and this certification was submitted along with Carter's application to the DOE. On January 30, 1995, the DOE notified Carter by letter that the vacancy announcement for all three positions had been canceled. Again, the DOE made this cancellation prior to interviewing or screening any applicants.

Finally, on May 22, 1995, Carter applied for a Contract Specialist, GS–01102–13 position announced in Vacancy Announcement Number 95–EH–71–250. In September 1995, Carter received yet another letter from a DOE Headquarters Personnel Specialist dated July 10, 1995, indicating that the position's vacancy announcement had been canceled. Neither Carter nor any other applicants were screened or interviewed for this position prior to the cancellation.

The second category of employment decisions made by the DOE affecting Carter involve his application for one of four Contract Specialist, GS–1102–13 positions advertised in Vacancy Announcement Number 93–PR–003/004/005/028. For the two positions that were filled in conjunction with this vacancy announcement, the personnel office collected applications and forwarded them to a panel of three individuals for review and scoring. This panel was composed of an African American male, an African American female, and a white male. The panel's purpose was to identify for the selecting official which candidates among all applicants were the "best qualified" for the available positions. The names of individuals rated as "best qualified" were then forwarded to the selecting official for further consideration.

The panel rated the applicants on a scale of 1 to 48 and required that the applicants obtain a minimum score of 31 to be characterized as "best qualified," thereby permitting the applicant to proceed to the interview stage of the selection process. In March 1993, Carter received a score of 20 from the panel and thus, did not make the "best qualified" list. As a result of this score, Carter did not proceed through the selection process and was never interviewed by the selecting official.

The Department hired DOE employees John Harris, a white male, and Kristen Wright, a white female, to fill two of the four GS–13 Contract Specialist positions advertised in this vacancy announcement. Harris received a perfect score of 48 and Wright received a score of 41 from the panel in the pre-screening process.

After the selection of these individuals, the DOE advised selecting official, Scott Sheffield, that due to budgetary constraints, he would not be permitted to hire the two outside applicants whom he had selected for the remaining slots. The DOE chose instead to fill those vacancies with two GS–13 employees, both white males, from the DOE's Office of Financial Services ("OFS") Those chosen to fill these vacancies were both employed in the 1102 job series as GS–13 Procurement Analysts prior to their transfer to the Contract Specialist position and were transferred upon the elimination of their positions at OFS. Carter filed a formal EEO complaint concerning his non-selection for these jobs in July 1993.

## II. *Analysis*

### A. *Summary Judgment*

Defendant has moved for summary judgment on the age, race, and retaliation claims of discrimination brought by the plaintiff in this case. Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to obtain summary judgment, the movant has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When confronted by a properly supported motion for summary judgment, the opposing party must produce some contrary evidence which could support a favorable verdict.

To defeat summary judgment, an issue of fact in dispute must be both genuine and material—one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. *Plaintiff's Discrimination Claims*

The plaintiff in both Title VII and ADEA actions bears the ultimate burden of proving that his employer intentionally discriminated against him. To make such a showing of discrimination, the plaintiff can rely on either direct or indirect evidence to support their charge. In the absence of direct evidence, the plaintiff may use indirect evidence and the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because the plaintiff in this case offers no direct evidence of discrimination, the court must employ the *McDonnell Douglas* frame-

work. This analysis can be relied upon for claims of both race and age based discrimination.

Under the *McDonnell Douglas* analysis, the plaintiff first bears the initial burden of establishing a prima facie case of discrimination. As a preliminary matter, it should be noted that it is uncertain whether plaintiff is alleging discrimination in hiring or in the DOE's failure to promote him. Carter does state in his Supplemental Opposition to Summary Judgment that he has "had a long struggle seeking to win a promotion" in the DOE, and therefore his claims of discrimination will be treated as failures to promote. Pl.'s Supp. Opp. to Summ. J. at 2.

In order to establish a prima facie case of discriminatory failure to promote, the plaintiff must show by a preponderance of the evidence: (1) that the plaintiff belongs to a protected group; (2) that he was qualified and applied for a promotion; (3) that the plaintiff was rejected despite the plaintiff's qualifications; and (4) that the position remained open and was filled by a similarly qualified person from outside the protected group. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

Once a prima facie case of discrimination has been established by the plaintiff, a burden of production shifts to the employer to "articulate some legitimate, non-discriminatory reason" for his actions. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. 1817. To sustain this burden, the employer must only introduce some evidence that he was not motivated by a discriminatory animus. *Burdine*, 450 U.S. at 257, 101 S.Ct. 1089.

Upon satisfaction of this burden of production by the articulation of a legitimate, non-discriminatory reason for the adverse employment decision, the presumption created by the prima facie case is effectively rebutted and "simply drops out of the picture." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff then bears the burden of proving, by a preponderance of

**6**

the evidence, that the reasons articulated by the defendant for the employment actions are merely a pretext for discrimination. *Id.* at 511, 113 S.Ct. 2742. At this point in the order of proof, the plaintiff's burden merges with his ultimate burden of proving that he was the victim of intentional discrimination. Indeed, if the plaintiff fails at this stage, summary judgment must be entered for the defendant. However, the converse is not true. Where a plaintiff succeeds in showing that the defendant's reason is pretextual, judgment is not required as a matter of law for the plaintiff. *Id.* The evidence, whether direct or circumstantial, must establish the employer's discriminatory intent or motivation and not simply that the plaintiff is a member of a protected class and that he has been subjected to some adverse employment decision.

### 1. *The Canceled Vacancies and Carter's Claims of Race and Age Discrimination*

■ As stated, a plaintiff alleging a claim of discrimination based on indirect evidence has the initial burden of establishing a prima facie case of discrimination by the employer. With respect to the vacancies canceled by the DOE, defendant argues that plaintiff has failed to prove his prima facie case, as the DOE never hired anyone outside the protected group to fill these positions. As such, defendant contends that plaintiff cannot satisfy the fourth prong of the *McDonnell Douglas* analysis. Defendant's argument with respect to these vacancies is correct.

■ To satisfy the *McDonnell Douglas* formula, a plaintiff must demonstrate "that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Because the DOE canceled the vacancy announcements at issue, the position did not remain open, and Carter cannot meet the fourth requirement of the *McDonnell Douglas* formula. *See, e.g., Zolotarevsky v. General*

*Elec. Co.,* 862 F.Supp. 659, 663–64 (D.Mass. 1994). Carter makes the erroneous assertion that "whether the vacancy was canceled or not is almost beside the point." Pl.'s Opp. to Def.'s Mot. for Summ. J. at 20. Indeed, in *Zolotarevsky,* the court held that the plaintiff failed to establish a prima facie case because no one was ever hired for the vacant position, and the vacancy was ultimately canceled. 862 F.Supp. at 663–64. Relying on the reasoning employed in *Zolotarevsky,* Carter is similarly unable to establish a prima facie case.

■ Even if this court were to adopt the reasoning set forth in *Terry v. Gallegos,* 926 F.Supp. 679 (W.D.Tenn.1996), and conclude that a vacancy cancellation could be the basis of a failure to promote claim, the court finds that the defendant in this case has offered a legitimate, nondiscriminatory reason for its cancellations of the vacancies at issue in this case, namely budgetary considerations. Moreover, Carter has not met his burden of proving that the reasons produced by the DOE for the cancellations were merely a pretext for discrimination.

Carter offers only conclusory allegations that the cancellations were a part of a scheme designed to prevent members of certain protected classes from obtaining promotions within the DOE. In his opposition to defendant's motion for summary judgment, Carter asserts "there were reasons to believe [that] the cancellation was discriminatory and/or retaliatory." Pl.'s Opp. to Def.'s Mot. for Summ. J. at 21. In support of this contention, Carter offers the affidavit of Linda Sapp, an employee in the Office of Procurement Operations. Sapp stated that "[she] believes that vacancy announcements are canceled when the selecting official sees from the applications that s/he will have to select a black employee." Sapp Aff. ¶¶ 8–11. However, Sapp provides no evidence that such actions have been taken by selecting officials with respect to Carter. Such statements are simply inadequate to demonstrate that the defendant's proffered reasons for canceling the vacancy announcements are pretextual.

Carter also presents other affidavits in which affiants make broad and sweeping alle-

gations of general negative treatment experienced by African Americans within the DOE. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 5 ("The DOE often uses budgetary justifications when it takes actions detrimental to African Americans. Nolan Aff. ¶ 3; Wood Aff. ¶¶ 19–20."). However, none of these affidavits offers any evidence whatsoever that Carter has been the victim of disparate treatment in his efforts to gain a promotion within the DOE or that the DOE has canceled vacancies with the specific intent to discriminate against him.

As has been stated, "neither the nonmovant's conjecture and surmise nor mere 'conclusory allegations of discrimination, without more' are sufficient to defeat a motion for summary judgment." *Carney v. American University*, 960 F.Supp. 436, 439 (D.D.C. 1997) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)). This is especially true where the nonmovant would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. Thus, plaintiff has failed to demonstrate that the employer's proffered reasons for the cancellations were pretextual, as there is no evidence that the cancellations were a subterfuge for discriminatory intent. Defendant's motion for summary judgment on the discrimination claims of Carter pertaining to the positions that were canceled by the DOE must be granted.

### 2. *Vacancies Filled By Other Employees*

Defendant has also moved for summary judgment on the discrimination claims brought by Carter pertaining to the vacancy announcements for positions that were ultimately filled by others. As stated, the DOE filled two of the four GS–13 Contract Specialist positions advertised in Vacancy Announcement No. 93–PR–003/004/005/028 with a white male applicant and a white female applicant. The vacancy announcements for the other two positions were canceled and filled by the transfer of two OFS employees into the vacancies.

Defendant contends that even if Carter can establish a prima facie case of discrimination under the *McDonnell Douglas* analysis, he cannot demonstrate that the proffered

reasons for the rejection of his application for these positions were a pretext for discrimination. As will be demonstrated, plaintiff cannot meet the requirements set forth under the burden shifting approach established in *McDonnell Douglas* and therefore, defendant is entitled to summary judgment on these claims.

■ As previously discussed, to make out a prima facie case of non-promotion, the plaintiff must show: (1) membership in a protected group; (2) that he was qualified for and applied for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees, not members of the protected class, were promoted at the time the employer denied the plaintiff's request for promotion. *Johnson v. Brock*, 810 F.2d 219, 223 (D.C.Cir.1987). Carter is an African American male over the age of forty and was considered and denied for vacancy announcements that were ultimately filled by individuals outside the protected groups of which Carter was a member. However, defendant submits that plaintiff cannot make out a prima facie case with regard to the selections at issue because he lacked experience in the 1102 job series and was not similarly situated to the individuals ultimately selected to fill these positions.

Viewing the evidence presented in the light most favorable to the plaintiff, Carter has presented evidence demonstrating that he is minimally qualified for the vacancies at issue. He holds a M.S. in Management and Contract and Acquisition Management. Moreover, Carter has been certified by the OPM as qualified for a GS–12/13 Contract Specialist position in the 1102 job series.

■ Because Carter has established a prima facie case, a burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action taken against Carter. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. In explaining the rejection of Carter, defendant has described the selection process and indicated that Carter failed to make the "best qualified" list composed by the selection panel. Def.'s Mot. for Summ. J at 3. Applicants were required to obtain a mini-

mum score of 31 in order to be considered as "best qualified" and proceed to the interview phase of the selection process. Carter received a score of 20 and thus, was not interviewed for the vacancies. The panel based this score on Carter's inexperience working in the 1102 job series and the relative importance of on-the-job experience compared to whatever advanced degrees an applicant may possess. Indeed, the other selectees had worked in the 1102 job series for several years.

The DOE canceled the other two vacancies advertised in this announcement for budgetary reasons and filled these positions by transferring two GS–13 employees from their positions at OFS. Both of these individuals were employed in the 1102 job series as Procurement Analysts prior to their transfer. Moreover, these individuals were transferred due to the elimination of the OFS positions that they held. In light of the foregoing, defendant has met the burden of producing a legitimate, non-discriminatory reason for the rejection of Carter.

▪ At this point, the presumption of discrimination created by plaintiff's prima facie case has been rebutted and plaintiff must now prove by a preponderance of the evidence that the reasons articulated by the defendant for the adverse employment actions are merely a pretext for discrimination. *Hicks*, 509 U.S. at 515, 113 S.Ct. 2742. To show that the defendant's proffered reasons were pretextual, Carter must show "both that the reason was false, and that discrimination was the real reason." *Id.* Indeed, to survive defendant's motion for summary judgment, Carter must present sufficient evidence from which a jury could find that defendant's reasons are pretextual. Carter has not met this burden.

Instead of proffering evidence of pretext and discrimination, Carter has chosen to rely on conclusory allegations and the strength of his prima facie case. Carter points to the

alleged disparate treatment received by Linda Sapp as evidence that his non-selection was also the result of discriminatory animus. Sapp Aff. ¶¶ 3–10 (citing Sapp's experiences and stating "[a]ny of these examples alone would raise an inference of discrimination"). Sapp's unconfirmed experiences are wholly irrelevant as to whether the defendant's proffered explanation in the instant case is pretextual.

▪ Without more, this court is limited in its ability to question the employer's actions in this case. As one court has indicated, "Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates." *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Ramey v. Bowsher*, 915 F.2d 731, 735 (D.C.Cir. 1990)). The selection process utilized by the DOE included a selection panel that cut across racial and gender lines. Moreover, the selection procedures employed by the panel do not reflect one hint of discriminatory animus.[1] "Even if a court suspects that a job applicant 'was victimized by poor [ ] selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Id.* (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982)). Therefore, the absence of any evidence of pretext with respect to the defendant's legitimate, non-discriminatory reasons for the adverse employment action warrants the granting of summary judgment for defendant on these claims as well.

3. *Mixed–Motive*

Carter also asserts that he has established a prima facie case of discrimination based on a mixed-motive analysis with respect to these positions. The Supreme Court first considered the problem of mixed-motive discrimination cases in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268

---

1. Carter again points to the affidavit of Sapp as evidence of discrimination employed in the selection process by the panel. Sapp indicated that "other African Americans would go along with management's discriminatory methods of promoting and evaluating Blacks, because they feel

they have no choice and are afraid of retaliatory actions." Sapp Aff. ¶ 14. However, other than this conclusory statement, Carter offers no evidence that the panel employed discriminatory means in making their selection of the "best qualified" individuals for the positions at issue.

(1989). In that case, the Court held that if a plaintiff could prove through direct evidence that a discriminatory factor played a motivating part in the employer's decision, then a burden of persuasion shifted to the employer. The employer's burden was then to prove by a preponderance of the evidence that it would have made the same decision in the absence of the discrimination.

The Civil Rights Act of 1991 supplanted the Court's decision in *Price Waterhouse* in part. The 1991 Act clarified the issue that had closely divided the Court in *Price Waterhouse,* specifying that a plaintiff need only establish that race, color, religion, sex, or national origin was a motivating factor in the employer's decision. 42 U.S.C. § 2000e–2(m). Furthermore, the 1991 Act affirmed the *Price Waterhouse* holding that mixed-motive is an affirmative defense on which an employer bears the burden of persuasion, but overruled the portion of the holding that an employer could avoid all liability by proving that it would have made the same decision despite the illegitimate factor. 42 U.S.C. § 2000e–5(g)(2)(B). Such a showing will only limit the scope of relief available to the plaintiff.

To warrant the implementation of the analysis developed in *Price Waterhouse* and modified by the 1991 Act, the plaintiff must initially demonstrate that "an impermissible criterion was in fact a 'motivating' or 'substantial' factor in the employment decision." *Sergio de la Cruz v. New York City Human Resources Admin. Dept. of Social Services,* 82 F.3d 16, 23 (2d Cir.1996) (emphasis in the original). Only after the plaintiff has shown that the forbidden animus was a motivating factor in the employment decision does the burden shift to the employer to prove that it would have made the same decision absent some discriminatory factor. The plaintiff's initial burden in a mixed-motive case is heavier than the lesser showing required to establish a prima facie showing of discrimination under *McDonnell Douglas. Sergio de la Cruz,* 82 F.3d at 23. The plaintiff must provide some direct evidence to support allegations of discriminatory intent— a showing that is not required under the *McDonnell Douglas* analysis. As Carter has

not provided evidence sufficient to satisfy even the lesser requirements of the *McDonnell Douglas* framework, he has not raised a genuine issue of material fact under the mixed-motive analysis and his claim of discrimination based on this theory must also fail.

### 4. *Retaliation*

Carter claims that he failed to obtain a promotion within the DOE, in part, because of his prior EEO activity. To establish a prima facie case of retaliation, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the person engaged in the protected activity; and (3) a causal connection between the protected activity and the adverse employment decision. *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1423 (D.C.Cir. 1988); *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984). The employer may rebut the plaintiff's prima facie case by articulating non-retaliatory reasons for its actions. The burden then shifts back to the plaintiff to prove that the proffered non-retaliatory reasons are pretextual.

In the instant case, Carter is unable to establish a prima facie case of retaliation. Although Carter engaged in protected activity by filing EEO charges against DOE officials in both 1991 and 1993, he fails to show that there is a causal connection between this protected activity and any alleged adverse employment action. "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell,* 759 F.2d at 86. While Carter points to the close proximity between the protected activity and the alleged adverse employment action, he makes no showing that any of those capable of making employment decisions had knowledge of these charges. Instead, Carter can only provide conclusory assertions that these officials possessed such knowledge in support of his prima facie case. Pl.'s Opp. to Def.'s Mot. for

Summ. J. at 4 ("Although management officials with responsibility for selecting employees pursuant to the vacancy announcements identified in the case at bar have denied knowledge of the EEO activities resulting in trial, they reasonably should have known of Plaintiff Carter's prior EEO complaints."). As Carter has provided no evidence that the hiring officials were aware of his previous discrimination complaints, no genuine issue of material fact exists, and he has not established a prima facie case of retaliation.

### III. Conclusion

For these reasons, the court will grant defendant's motions for summary judgment on all of the discrimination claims brought by Lawrence Carter.

A separate order shall issue this date.

### ORDER

For the reasons stated in the accompanying memorandum opinion, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED, and plaintiff's claims against defendant are hereby DISMISSED WITH PREJUDICE.

SO ORDERED.