**Dennis LABOY, Plaintiff,**

v.

**Paul H. O'NEILL, Secretary, U.S. Dep't of Treasury, Defendant.**

**No. CIV.A.99–1442(RMU).**

United States District Court, District of Columbia.

July 18, 2001.

Richard A. Salzman, Heller, Huron, Chertkof, Lerner, Simon & Salzman, Washington, DC, Charles Wilson Schoeneman, Arlington, VA, for plaintiff.

Gordon Michael Harvey, U.S. Attorney's Office, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting the Defendant's Motion
### for Summary Judgment

## I. INTRODUCTION

Dennis Laboy brings this suit against his employer, the United States Bureau of Engraving and Printing ("BEP"). Mr. Laboy, a uniformed BEP police officer, was terminated from his position in 1998. He challenges his termination on the grounds that it was discriminatory and retaliatory, in violation of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e–16 ("Title VII"). Specifically, the plaintiff alleges that the defendant discriminated against him on the basis of his race (Hispanic) and retaliated against him for engaging in protected activity.

Before filing suit in this court, the plaintiff challenged his termination before the Merit Systems Protection Board ("MSPB"). After a full hearing, the plaintiff was reinstated to his position as a uniformed BEP police officer and recovered some of his out-of-pocket losses, but did not prevail on his Title VII claims. In June 1999, the plaintiff filed suit in this Court seeking *de novo* review of the MSPB's decision on his Title VII claims. He alleges that as a result of the defendant's actions, he suffers from severe medical, emotional, and financial distress, and is entitled to compensatory damages under Title VII.

This matter now comes before the court on the defendant's motion for summary judgment. For the reasons that follow, the court will grant the defendant's motion.

## II. BACKGROUND

Dennis Laboy, a Hispanic man of Puerto Rican ancestry, was hired by the BEP as a uniformed police officer in 1995. *See* Pl.'s First Am. Compl. ("Compl.") at 2. The plaintiff, a member of the BEP bike patrol, was responsible for patrolling a designated area around BEP facilities on his bicycle. *See* Mot. for Summ. J. at 2. He worked in this position from 1995 until his termination in June 1998. *See* Compl. at 2. The plaintiff was permanently reinstated to the bike patrol in May 1999, and continues to work in this capacity to date. *See id.*

In his amended complaint, the plaintiff alleges that BEP subjected him to "a constant and regular series of intentional and insulting, hurtful, and damaging acts" for a period of four years before his removal. *See* Compl. at 3. Specifically, he alleges that BEP management and supervisory employees in the Office of Security engaged in racially motivated acts against him. *See id.* For example, shortly after the plaintiff was hired, one of his supervisors, Lt. Thomas Garcia, asked him to serve as a witness for another Hispanic officer who had filed an Equal Employment Opportunity ("EEO") complaint of race discrimination. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") at 5–6. The plaintiff agreed and filed an affidavit claiming that he had experienced "significant resistance to his application for employment" when he applied for a position on the force. *See id.* The plaintiff attributed this resistance to race discrimination. *See id.*

One year later, in 1997, the plaintiff filed a complaint with the EEO office after the BEP rejected his medical shaving profile.[1] *See id.* at 7. In his complaint, he alleged that BEP treated him differently than other non-Hispanic police officers who requested the same exemption. *See id.* Later that year, the plaintiff complained to BEP management about an officer who he claimed was verbally abusing him. BEP responded by proposing to suspend the plaintiff for insubordination. *See id.* at 8. The plaintiff contacted the EEO office in response to this proposal, and BEP subsequently reduced the punishment to a reprimand. Over the next several months, the plaintiff continued to complain to the EEO office about allegedly discriminatory actions taken against him. Commander

---

1. The plaintiff alleges that he suffers from a medical condition called pseudofolliculitis, which makes shaving difficult and painful.

*See* Opp'n at 7. The plaintiff also alleges that BEP's command has "repeatedly rejected Laboy's requests [for a shaving exemption]." *Id.*

Lindsey received notification every time the plaintiff filed an EEO complaint. *See* Opp'n at 8.

The events giving rise to this litigation occurred on February 13, 1998, when the plaintiff and his partner, Carl Smith, an African–American BEP officer, entered Phillips Restaurant while on duty. *See* Opp'n at 9. Several BEP employees happened to be at Phillips Restaurant that day and observed the two officers. Steven Elgin, one of the BEP employees present at the bar, telephoned the police officers' supervisor, Deputy Inspector Snowden, because he was concerned about "the appearance of armed, uniformed BEP police officers drinking at a public bar." *See* Mot. for Summ. J. at 3. Inspector Snowden called the plaintiff and his partner back to the BEP and lectured the two about "the perception of wrong doing." *See id.* Inspector Snowden determined that the plaintiff and Officer Smith had "good attitudes" and were "honest with him," and that no further action was necessary. *See* Opp'n at 9–10.

The following Monday, two officers told Commander Lindsey what had happened at the bar. *See* Def.'s Reply in Support of Mot. for Summ. J. ("Reply") at 16. Unable to reach Inspector Snowden by phone, Commander Lindsey ordered an official investigation into "Conduct Unbecoming a Police Officer" and assigned Silas Oglesby to conduct the investigation. *See id;* Opp'n at 10. In a sworn statement, the plaintiff attested that he and Officer Smith had not been drinking at the bar together,

had only water to drink, had not left their bikes unattended, and were only in the restaurant for about three to five minutes. *See* Def.'s Statement of Material Facts to Which There is No Genuine Dispute ("Def.'s Statement") ¶ 12.

After interviewing the witnesses present at Phillips Restaurant that night, investigators found several discrepancies between the statements of the witnesses and those of the plaintiff and Officer Smith, including:

> (1) whether plaintiff and his partner were drinking against the bar; (2) whether plaintiff and his partner left their police bikes unattended; (3) what beverages they were drinking[2]; (4) whether either plaintiff or his partner used the phone while at the bar; and (5) the amount of time that plaintiff and his partner were in the bar.

Mot. for Summ. J. at 5. Based on these discrepancies, Mr. Oglesby determined that the plaintiff and Officer Smith had lied in their sworn statements.[3] *See* Def.'s Statement ¶ 13.

At the conclusion of Mr. Oglesby's investigation, Chief Stephens reviewed the Report of Investigation, met with the plaintiff and his representative and considered the plaintiff's written response to the Notice of Proposed Removal. *See id.* ¶¶ 19–24. Chief Stephens also "consulted a schematic which he had prepared that made a side-by-side comparison between the statements of the plaintiff and the statements of the witnesses at Phillips' bar ... [and] consulted both with Human Resources and

---

2. Contrary to the officers' testimony, several witnesses claim that the two were drinking a dark liquid, presumably cola or iced tea. *See* MSPB Decision at 12.

3. The defendant claims that given the "gravity of the charge," both officers were given ample opportunity to recant their testimony or to explain the inconsistencies. *See* Def.'s State-

ment ¶ 13. By contrast, the plaintiff states that he was never given an opportunity to recant his statement, although when asked in his deposition whether Chief Stephens ever asked him "to come clean," the plaintiff admitted that he may have, but could not remember. *See* Lindsey Dep. II at 111; Opp'n at 6.

BEP's Office of General Counsel to ensure that plaintiff's penalty comported with BEP's Table of Offenses and Penalties." *Id.* In the end, Chief Stephens concluded that he would remove the plaintiff for lying during an official investigation. *See id.*

In March 1998, Commander Lindsey issued a memorandum to the Acting Chief of the Labor Management Relations Division, recommending the removal of both the plaintiff and Officer Smith for "willfully [making] false and misleading statements verbally and in separate sworn written statements, despite ample opportunity to be forthright and truthful." *See* Def.'s Ex. F. At this time, the BEP gave the plaintiff the option of resigning. *See id.* at 6. Instead, in June 1998, the plaintiff appealed his removal to the MSPB. *See* Compl. at 3. The Administrative Judge ordered that the plaintiff be reinstated to his position with back pay and interim relief. *See id.* In November 1998, the plaintiff returned to his position with the BEP.[4] *See id.*

The plaintiff alleges that BEP's actions have had a "devastating impact on his life." *See* Opp'n at 14. The plaintiff provides an exhaustive list of harms, including extreme anxiety, depression, physical illness, persistent and debilitating headaches, insomnia, inability to concentrate, humiliation, and inability to pay his bills, and seeks compensation for the "mental, physical and financial strain that his illegal termination has caused." *See id.* at 14–15.

The defendant now moves for summary judgment on the grounds that: (1) the plaintiff has failed to demonstrate a prima facie case of discrimination or retaliation; (2) the defendant has articulated several legitimate, nondiscriminatory reasons for the plaintiff's termination; and (3) the plaintiff cannot establish that the defen-

dant's reasons are a pretext for unlawful discrimination or retaliation.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." *Celotex,* 477 U.S. at 325,

---

4. In his complaint, the plaintiff alleged continued acts of retaliation and discrimination following his reinstatement. *See* Compl. at 4;

Pl.'s Statement of Genuine Issues at 11. He has since withdrawn these allegations.

106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions with special caution. *See Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

### B. Analysis

The plaintiff alleges that BEP management has subjected him to a "constant and regular series" of racially motivated acts. He claims that the BEP took action against him because of his race (Hispanic), in violation of Title VII. Additionally, the plaintiff alleges that the defendant retaliated against him for engaging in protected activity. The defendant counters that its decision to terminate the plaintiff for "lying during the course of an official investigation," is a "legitimate and nondiscriminatory" explanation for the plaintiff's termination. *See* Mot. for Summ. J. at 2.

### 1. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination or retaliation under Title VII, the plaintiff must first establish a prima-facie

case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);[5] *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir. 1998) (*en banc*); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden is merely one of production. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons". It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *See id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination or retaliation was the real reason for the action. *See McDonnell Douglas,* 411 U.S. at 802–805, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.; Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

---

**5.** The *McDonnell Douglas* test applies in instances such as this where there is no *direct* evidence of discrimination.

Once the defendant articulates a "legitimate, nondiscriminatory reason" for the adverse action, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the defendant's stated reasons are a pretext for discrimination or retaliation. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence"' and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (*quoting Burdine*, 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Aka*, 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although the "trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *See Reeves*, 120 S.Ct. at 2106 (*citing Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554. In *Aka*, the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka*, 156

F.3d at 1290–91. Rather, the plaintiff must proffer evidence beyond mere speculations and allegations when refuting the defendant's legitimate, non-discriminatory reasons for its decisions. *See Brown v. Brody*, 199 F.3d 446, 458 (D.C.Cir.1999). " 'As courts are not free to second-guess an employer's business judgment,' a plaintiff's mere speculations are 'insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment.' " *Id.* at 459 (*quoting Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

## 2. Prima Facie Case of Discrimination and Retaliation

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Thus, Mr. Laboy must demonstrate: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *See Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). The elements of a Title VII retaliation claim differ slightly. A plaintiff must establish: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the person engaged in the protected activity; and (3) a causal connection between the protected activity and the adverse employment decision. *See Carter v. Pena*, 14 F.Supp.2d 1, 9 (D.D.C.1997), *aff'd*, 1998 WL 315616 (D.C.Cir.1998).

The plaintiff easily satisfies the first two elements of a prima-facie case of discrimination and retaliation. Mr. Laboy is a member of a protected class (Hispanic), he participated in a protected activity (filed EEO claims), and he suffered an adverse employment action (termination). By con-

trast, the plaintiff does not satisfy the third element of either of his claims and thus cannot make a prima-facie case of discrimination or retaliation.

### a. The Plaintiff Has Failed to Establish a Prima–Facie Case of Discrimination

■ The plaintiff may satisfy the third element of a prima facie case of discrimination by showing that the adverse employment action gives rise to an inference of discrimination. *See Brown*, 199 F.3d at 452. A reasonable inference of discrimination arises if a plaintiff can show that other similarly situated employees, not members of his protected class, did not suffer similar adverse actions. *See Mack v. Strauss*, 134 F.Supp.2d 103, 114 (D.D.C.2001). "[T]o make such a comparison, plaintiff must show that the individuals with whom he seeks to compare his treatment 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (*quoting Phillips v. Holladay Property Servs., Inc.*, 937 F.Supp. 32, 37 (D.D.C. 1996), *aff'd without op.*, 1997 WL 411695, 1997 U.S.App. LEXIS 19033 (D.C.Cir. 1999)).

As suggested by the conduct of the defendant, the plaintiff and Officer Smith, the plaintiff's partner, are similarly situated. Indeed, Officer Smith and the plaintiff are almost *identically* situated. The only relevant difference between the two is that the plaintiff is Hispanic and Officer Smith is African–American. The plaintiff attempts to distinguish himself from Officer Smith by claiming that BEP investigators targeted the plaintiff throughout the investigation. For example, the plaintiff claims that because Inspector Oglesby warned

Officer Smith to "take care of himself and his family first," he was somehow pressuring Officer Smith to change "his recollection of the events [so that] BEP could have more easily justified punishing Laboy." *See* Opp'n. at 28. This characterization of Inspector Oglesby's comment distorts the record. As the defendant correctly points out, the plaintiff's proposition that "some inference of either discrimination or retaliation can be made because Inspector Oglesby, allegedly, did not put enough 'pressure' on the plaintiff to tell the truth" is absurd. *See* Reply at 21 n. 23 (internal citations omitted).

The plaintiff also alleges that his termination is inconsistent with BEP's discipline of other officers charged with misconduct involving dishonesty. *See* Opp'n at 31. The plaintiff provides several examples of BEP officers who have received different punishments for their dishonest behavior. *See id.* at 31–32. Not only are the plaintiff's examples distinguishable from his situation, but none involve lying under oath in an official investigation. *Cf. Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999) (concluding that a comparable employee was not similarly situated because "he was accused of 'misconduct of a type that does not involve honesty and forthrightness, which is what [the plaintiff's] case was about'"). Furthermore, the record indicates that BEP has either terminated or required employees to resign if they lied to investigators. *See* Opp'n at 32.

Finally, there is no evidence that the plaintiff was treated any differently than other BEP employees with regard to his pre-termination activity. For example, the plaintiff alleges that BEP discriminatorily rejected his medical shaving profile and issued a "racially motivated" AWOL charge for his refusal to work overtime hours. *See id.* at 7. The plaintiff fails to provide any concrete evidence of discrimi-

natory motive. Indeed, the plaintiff's own union representative found no indication that BEP management was treating the plaintiff any differently than his peers. *See* Lee Decl. ¶ 3. Because the plaintiff cannot point to another similarly situated employee, not in his protected class, who was treated differently than him, he cannot establish a prima-facie case of discrimination.

### b. The Plaintiff Has Failed to Establish a Prima–Facie Case of Retaliation

■ The third element of a prima-facie case of retaliation requires the plaintiff to establish a causal connection between the protected activity and the adverse employment decision. *See Carter v. Pena,* 14 F.Supp.2d 1, 9 (D.D.C.1997). This "may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Id.* at 9. Here, the plaintiff makes no showing "that any of those capable of making employment decisions had knowledge of these charges," and thus he fails to establish a prima-facie case of retaliation. *See id.; see also Holbrook,* 196 F.3d at 264.

Although Chief Stephens was the deciding official regarding the plaintiff's termination, *see* Reply at 2, the plaintiff offers no concrete evidence that Chief Stephens was ever aware of his EEO activity. Instead, the plaintiff mischaracterizes statements made by Chief Stephens at his deposition. For example, the plaintiff alleges that Chief Stephens "testified at his deposition that he *required* his supervisors to notify him if any employee raised allegations of bias."

Opp'n at 8. This statement, if true, could have created a material issue of fact. What Chief Stephens actually said, however, was that he would *want* his supervisors to notify him. *See* Stephens Dep. at 58. Consequently, there is no indication that Chief Stephens was aware of the plaintiff's EEO activity. Absent such evidence, the plaintiff cannot establish the causation element of a prima-facie case of retaliation.

### 3. Lying under oath is a legitimate and non-discriminatory reason for the plaintiff's termination

Even assuming *arguendo* that the plaintiff had established a prima-facie case of discrimination and retaliation, the defendant still would have to meet its burden of providing a legitimate, non-discriminatory explanation for the plaintiff's termination.[6] The defendant is not required to prove that his choice was wise, but only that his reasons were nondiscriminatory. *See Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986).

■ Terminating an employee for making false statements in an official investigation is both legitimate and non-discriminatory. *See LeChance v. Erickson,* 522 U.S. 262, 263, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998) ("Neither the due process clause nor [Civil Service Reform Act] precludes federal agency from sanctioning employee for making false statements to agency regarding alleged employment-related misconduct on part of employee"); *see also Williams v. Boorstin,* 663 F.2d 109, 117 (D.C.Cir.1980) ("[The plaintiff] or any other ... employee, civil rights advocate or otherwise ... could simply never be entitled to, nor expect to retain, his or

---

**6.** While the MSPB board may have disagreed with the BEP's decision to terminate the plaintiff, in cases of discrimination, MSPB decisions are to be reviewed *de novo. See Hayes v. United States Gov't Printing Office,* 684 F.2d 137, 139 (D.C.Cir.1982).

her job after establishing such a formidable record of lying to his employer"). The plaintiff argues that he was "singled out for highly unusual treatment" during the investigation, and that his punishment was inconsistent with traditional BEP sanctions. *See* Opp'n at 32. This argument lacks merit. The decision to terminate the plaintiff was wholly consistent with the BEP's Table of Offenses and Penalties. *See* Def. Ex. 8 (suggesting anything from reprimand to removal for first offense of making false statements during the course of an investigation).

In addition, BEP alleges that it gave the plaintiff multiple opportunities to recant or explain the inconsistencies in his testimony. *See* Mot. for Summ. J. at 27. As the plaintiff's union representative explained, "Mr. Laboy refused multiple opportunities to 'come clean' with the BEP management concerning the events of February 13, 1998. Mr. Laboy dug his heels in and thus tied managements' hands in this matter." *Id* at 30. The plaintiff denies that he was afforded the opportunity to change his statement, yet he testified at his deposition that he has no reason to believe that his union representative would lie. *See id.* Because the court is to consider the facts in a light most favorable to the plaintiff, the court accepts Mr. Laboy's assertion as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. This dispute, however, is immaterial to the defendant's motion for summary judgment because the plaintiff fails to counter several material facts.

First, the plaintiff fails to address the contention that he tried to change a witness's testimony about the investigation (a fact deemed material by BEP decisionmakers). *See* Reply at 13. Consequently, the district court is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule 7.1(h) statement. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C.Cir.1996). In addition, the undisputed discrepancies in the plaintiff's testimony would have subjected him to discipline.[7] These reasons provide a legitimate and nondiscriminatory basis for terminating the plaintiff.

### 4. The Plaintiff Has Not Shown that the Defendant's Explanation is Pretextual

Once the defendant has proffered a legitimate explanation for the plaintiff's termination, the plaintiff must produce some objective evidence showing that the defendant's explanation is pretextual. *See Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089 (1980) (*quoting McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817) (citations omitted). The plaintiff, who has the ultimate burden of persuasion, may not offer his own speculations and allegations to refute an employer's legitimate, non-discriminatory reasons for its decisions. *See Carpenter v. Federal Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C.Cir.1999), *cert. denied*, 528 U.S. 823, 120 S.Ct. 69, 145 L.Ed.2d 59 (1999).

In the instant case, the plaintiff fails to call into question whether the defendant's proffered reason for his termination was pretextual. First, the plaintiff alleges that Commander Lindsey proposed Laboy's firing because he was "pissed off...to the max" about Laboy's previous EEO activity. *See* Opp'n at 2. Yet as the defendant correctly points out, Commander Lindsey made this comment "with regard to plaintiff's claim of discriminatory remov-

---

7. Specifically, if it had been determined that the plaintiff had been drinking in full uniform, had left his bike unattended, or had loitered while on duty, he would have been punished. *See* Reply at 8.

al...thus it provides no evidence in support of plaintiff's retaliatory removal claim." Reply at 2. Furthermore, Chief Stephens, not Commander Lindsey, made the decision to terminate the plaintiff. *See* Reply at 2. Consequently, Commander Lindsey's comments fail to provide evidence of pretext. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1078 (D.C.Cir.1999) (pointing to lack of evidence that managers who allegedly made discriminatory remarks participated in employer's discharge decisions).

The plaintiff's attacks on the underlying investigation also fail to discredit the defendant's proffered explanation. The plaintiff repeatedly attacks the BEP investigation as contrived or flawed.[8] Because the plaintiff is the non-movant, the court will accept these allegations as true. Even assuming the investigation was contrived, the court refuses to infer a discriminatory or retaliatory intent from the alleged "flaws" in the investigation. The fact that Officer Smith was treated identically to the plaintiff substantially undermines the plaintiff's allegations. If the investigation was flawed, it was flawed with respect to Officer Smith as well. Consequently, the investigation's "flaws" do not provide an adequate basis for denying summary judgment.

Additionally, the plaintiff attempts to support his allegations of discrimination and retaliation with the testimony of Officer Smith. When asked why he thought the plaintiff was investigated, Officer Smith testified: "Officer Laboy is pretty much a no-nonsense type of officer. If he sees an infraction or he sees that something's wrong, regardless of your rank or race, he's going to question you about it." *See* Tr. of MSPB Hr'g at 211. After this statement, Officer Smith gave several examples of incidents in which the plaintiff engaged in unpopular behavior.[9] *See* Tr. of MSPB Hr'g at 211–212. The plaintiff claims that Officer Smith "testified that he believed that Command had singled-out Laboy for punishment because he spoke out about mistreatment on the job, and that 'if it was any other officer...I wouldn't be sitting here.' " Opp'n at 34. The plaintiff has taken Officer Smith's testimony out of context. In his deposition, Officer Smith was asked if the plaintiff's termination had anything to do with race. Officer Smith stated: "I wouldn't say race, but I would say him period. *If it was any other officer...I wouldn't be sitting here.*" Tr. of MSPB Hr'g at 213 (emphasis added). Officer Smith's testimony is not evidence of discrimination or retaliation. The testimony, if anything, shows the opposite. "If the plaintiff shoots himself in the foot, surely there is no point in sending the case to the jury." *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir. 1998).

## VI. CONCLUSION

The plaintiff has failed to establish a prima facie case of either discrimination or retaliation. In addition, the defendant has proffered legitimate, non-discriminatory reasons for the plaintiff's claims, which the plaintiff has not rebutted as pretextual. Accordingly, for the reasons stated above,

---

8. Among the plaintiff's more creative arguments: (1) Inspector Oglesby put more pressure on Officer Smith to tell the truth under oath so that he would "turn on Laboy and change his story"; and that (2) BEP was so desperate to discipline the plaintiff that they were willing to punish innocent Officer Smith as well. *See* Opp'n at 28, 36 n. 16.

9. For example, the plaintiff once issued a citation to an upper-management lieutenant. He was "scrutinized" for it and the ticket was subsequently voided. *See* Tr. of MSPB Hr'g at 211–212.

the court grants the defendant's motion for summary judgment on all of Mr. Laboy's discrimination and retaliation claims. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed this 18th day of July 2001.