Cynthia Ann BOWIE, Plaintiff,

v.

John ASHCROFT, Defendant.

Civil Action No. 02–0037 (JMF).

United States District Court, District of Columbia.

Sept. 22, 2003.

Jill D. Sege, Silver Spring, MD, for plaintiff.

Cynthia Ann Bowie, Glendale, MD, pro se.

Diana L. Embrey, Paul, Hastings, Janofsky & Walker, L.L.P., Sherri Evans Harris, U.S. Attorney's Office, John D. Norquist, U.S. Department of Justice, Office of Community Oriented Policing, Washington, DC, for defendant.

### MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Huvelle for all purposes including trial pursuant to LCvR 73.1(a). I herein resolve *Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint and/or, in the Alternative, for Summary Judgment* ("D.Mot."). For the reasons set forth below, defendant's motion will be denied in part and granted in part.

### I. BACKGROUND

In this action, plaintiff alleges employment discrimination on the basis of race and retaliation for engaging in statutorily protected activity. Defendant has moved for partial dismissal of plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, for partial summary judgment.

Cynthia Bowie, a black female, has been employed by the Department of Justice ("DOJ") from 1984 to the present. Since September 1997, she has held the position of a GS–14 Supervisory Senior Policy Analyst (Regional Supervisor) in the Department's Office of Community Oriented Policing Services ("COPS"). Plaintiff's claim centers upon a series of incidents occurring over a two-year period, which she contends are evidence of her employer's discriminatory or retaliatory animus. The following incidents are the basis of plaintiff's claims of discrimination or retaliation:

## A. Non–Selection for COPS Program Compliance Officer

On June 11, 1999, plaintiff applied for the position of COPS Program Compliance Officer, Vacancy Announcement # 99–24–24001, a grade 14 position with promotion potential to grade 15. After interviewing for the position on September 2, 1999, plaintiff received notification on January 11, 2000 that she had not been selected. The successful candidate was Tracy Mock, a white female. *Second Amended Complaint,* ¶ 10.

## B. Cancellation of Job Vacancies

The following vacancy announcements were cancelled by the DOJ after plaintiff submitted an application and was found to be qualified.

1. Assistant Director, Intergovernmental and Public Liaison Division. Vacancy Announcement # 00–12–24001, GS–301–14/15. Date of plaintiff's application, April 21, 2000; date of cancellation, September 21, 2000. Plaintiff further states that the position was ultimately re-posted under Vacancy Announcement # 00–

17–24001 in April 2001 and filled by a white female employee after being held open for applications for only four days. *Id.* ¶ 15.

2. Assistant Director of the Grants Monitoring Division. Vacancy Announcement # 00–21–24001, GS–301–15. Date of plaintiff's application, June 9, 2000; date of cancellation, September 26, 2000. *Id.* ¶ 16. This position was never filled.

3. Regional Assistant Director, Grants Monitoring Division. Vacancy Announcement # 00–39–24001, GS–301–14/15. Date of plaintiff's application, October 10, 2000; date of cancellation, March 2001. *Id.* ¶ 20. This position was never filled.

4. Assistant Director, Grants Monitoring Division (second posting). Vacancy Announcement # 01–08–24001, GS–301–15. Date of plaintiff's application, March 8, 2001; date of cancellation, July 19, 2001. *Id.* ¶ 21. This position was later subsumed under another employee's position.

## C. Failure to Assign to Temporary, "Acting" Management Positions

In the following instances, plaintiff's co-workers were temporarily detailed to serve in an "acting" capacity for positions that plaintiff describes as "senior management." [1]

1. On March 28, 2000, plaintiff was notified that Carolyn Perrygo, a white female, had been assigned to serve as Acting Assistant Director of the Grants Monitoring Division. *Id.* ¶ 18.

---

**1.** It is not clear from the record whether these temporary assignments entailed additional pay or whether there was any established process by which qualified candidates could apply to be considered for these assignments.

2. On July 1, 2002, plaintiff learned that another white female, Shelly Longgruth, was assigned to serve as Acting Assistant Director of the Compliance Division. *Id.* ¶ 33.

On January 20, 2000, plaintiff contacted a DOJ Equal Employment Opportunity ("EEO") counselor to complain about her non-selection for the Program Compliance Officer position, alleging her non-selection had been motivated by racial as well as age discrimination. D. Mot ¶ 2.[2] On September 29, 2000, after a period of informal counseling, plaintiff filed a formal charge with the Department's EEO Staff, alleging she had been discriminated against on the basis of her race and age and in retaliation for engaging in protected EEO activity. In her administrative complaint, plaintiff cited two instances of discrimination and retaliation: (1) non-selection for the Program Compliance Officer position, and (2) failure to detail her to the position of Acting Assistant Director for Grants Monitoring. *Second Amended Complaint*, Exhibit A.

In response, on December 6, 2002, the DOJ EEO office sent plaintiff a letter formally acknowledging and summarizing her complaint, as well as informing her of her rights and responsibilities in the EEO complaint process. The letter also informed plaintiff of her options under the Age Discrimination in Employment Act (ADEA).[3] *Plaintiff's Opposition to Defendant's Partial Motion to Dismiss Second Amended Complaint or, in the Alternative, for Partial Summary Judgment* ("P.Opp."), Exhibit 2.

On January 11, 2001, the EEO staff amended her complaint to include two additional charges that it found to be like or related to her original claims. P. Opp., Exhibit 3. These additional charges involved the cancellation of Vacancy Announcement # 00–12–24001 (Assistant Director, Intergovernmental Affairs) and Vacancy Announcement # 00–21–24001 (Assistant Director, Grants Monitoring). D. Mot., Exhibit 4. On September 27, 2001, the EEO staff completed its investigation of the plaintiff's administrative complaint and notified her of the right to a hearing before an EEOC administrative law judge, or, alternatively, to file a civil action in U.S. District Court. D. Mot., Exhibit 3. By a letter dated October 13, 2001, plaintiff elected to request a final agency decision without a hearing. *Id.*, Exhibit 5.

On August 9, 2002, plaintiff sought EEO counseling in relation to her non-selection for the Acting Assistant Director of the Compliance Division in July 2002. Plaintiff subsequently filed a second formal complaint with the EEO staff on December 20, 2002. *Reply Memorandum in Support of Partial Motion to Dismiss Second Amended Complaint or, in the Alternative, for Summary Judgment* ("D.Reply"), Exhibit 1.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss Versus Summary Judgment

█ Defendant has captioned its motion as a "Partial Motion to Dismiss or, in the

---

**2.** The plaintiff was age 49 at the time of the selection; the successful candidate was age 33.

**3.** Under the ADEA, plaintiff had the option to pursue an administrative complaint under 29 C.F.R. Part 1614, or in the alternative, to file a civil action in U.S. District Court within 180

days of the alleged discriminatory act, provided that she first file with the EEOC notice of her intent to sue. Plaintiff concedes that such notice was not filed within the required period and has withdrawn any allegation of age discrimination from her complaint. P. Opp. at 4.

Alternative, for Partial Summary Judgment," thus invoking two separate and distinct legal standards. In support of its motion, however, the government offers materials outside the complaint. Under Rule 12(b), the tendering of those materials converts a 12(b)(6) motion to a motion for summary judgment, and summary judgment standards apply.

Under Rule 56(c), a court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, while the moving party is not required to bring forth evidence showing the absence of a genuine issue of material fact, it is required to "show" the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548.

### B. *Prima Facie* Requirements Under Title VII

 A plaintiff in a Title VII action has the burden of proving that her employer intentionally discriminated against her. This showing of discrimination can be made by direct or indirect evidence. In the absence of direct evidence, she must prove (a) that she is a member of a protected class; (b) that she was subject to an adverse employment action; and (c) that the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). For retaliation claims, the threshold requirements are slightly different. The plaintiff must show that she engaged in an activity protected under Title VII; that she was subject to an adverse action by the employer; and that the action was taken in retaliation for plaintiff's having engaged in a statutorily protected activity. *Cones v. Shalala*, 199 F.3d 512, 521 (D.C.Cir.2000). Both claims require the plaintiff to demonstrate an adverse action, defined as a "tangible employment action" constituting a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant responsibilities, or a decision causing a significant change in benefits." *Brown*, 199 F.3d at 456. In either case, the plaintiff's initial burden of establishing a *prima facie* claim is "not onerous." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### III. ANALYSIS

 Defendant has moved for partial summary judgment on two separate grounds. First, defendant contends that, with the exception of the January 2000 non-selection for the position of Program Compliance Officer, none of the incidents complained of meet the standard for a legally cognizable adverse action. Second, defendant argues that plaintiff has failed to exhaust her administrative remedies for the claims that were not part of her January 11, 2001 amended EEO charge. D. Reply at 4–5. As I noted recently in *Weathersby v. Secretary of the Interior*, 242 F.Supp.2d 20, 23 (D.D.C.2003), the issue of whether the plaintiff has exhausted her administrative remedies is moot if the plaintiff's substantive claim fails. Therefore, in reviewing defendant's motion, I

will first address the adverse action arguments and then consider the failure to exhaust arguments for any claims that may remain.

## A. Defendant's Arguments Regarding Failure to Demonstrate an Adverse Action

### 1. Cancellation of Vacancy Announcements

Defendant asserts that the cancellation of a job vacancy announcement does not "rise to the level" of an adverse action as defined in *Brown* because plaintiff experienced no reduction in salary, benefits, or responsibilities. D. Reply at 3–4. By this reasoning, defendant seems to argue that the cancellation of a job vacancy announcement can never be an adverse action within the meaning of Title VII. However, this Circuit has recognized that "no particular type of personnel action [is] automatically excluded from serving as the basis of a cause of action under [Title VII]." *Brown*, 199 F.3d at 455.

■ Accordingly, a plaintiff whose claim is premised on the cancellation of a vacancy announcement must meet the same *prima facie* elements required for "conventional" non-selection claims, *i.e.*, (1) that the plaintiff belongs to a protected group; (2) that she was qualified and applied for a position for which the employer was seeking applicants; (3) that the plaintiff was rejected despite her qualifications; and (4) that the position remained open and was filled by a similarly qualified person from outside the protected group. *Carter v. Pena*, 14 F.Supp.2d 1, 5 (D.D.C.

1997); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). When a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her *prima facie* case because she cannot satisfy the fourth prong of the analysis.[4] *Carter*, 14 F.Supp.2d at 5–6; *see also Morgan v. Federal Home Loan Mortgage Corp.*, 172 F.Supp.2d 98 (D.D.C. 2001) (stating that no adverse employment action exists if there was no vacancy at the time the plaintiff applied or the position was never filled). In fact, the *McDonnell Douglas* analysis requires that the plaintiff show that his "rejection did not result from ... the absence of a vacancy in the job sought." *International Bhd. of Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. 1843.

■ In this case, plaintiff alleges that she is a member of a protected class who applied, was qualified, and was rejected four times due to the cancellation of job vacancies. For Vacancy Announcement # 00–21–24001 (Assistant Director, Grants Monitoring) and Vacancy Announcement # 00–39–24001 (Regional Assistant Director, Grants Monitoring Division), she states that the announcements were cancelled and the positions were never filled. Thus, plaintiff has failed to satisfy the fourth prong of the analysis and cannot establish a *prima facie* case as to these claims. Therefore, defendant's motion for summary judgment will be granted as to these claims.

■ For Vacancy Announcement # 00–12–24001 (Assistant Director, Intergovern-

---

**4.** One court has found that, depending on the underlying motivation for a cancellation, a vacancy announcement may provide the basis for a failure to promote claim *Terry v. Gallegos*, 926 F.Supp. 679, 710 (W.D.Tenn.1996). However, even under that analysis, cancellation of a vacancy announcement would not constitute an adverse employment action if the defendant were able to provide legitimate, non-discriminatory reasons for the vacancy cancellation and the plaintiff failed to meet his burden of proving that those reasons were merely a pretext for discrimination. *Carter*, 14 F.Supp.2d at 6.

mental and Public Liaison Division), the plaintiff states that, after the vacancy was cancelled, the position was re-posted under Vacancy Announcement # 00–17–24001. At that time, the announcement was held open for only four days, and the position was filled by a white female employee. For Vacancy Announcement # 01–08–24001 (Assistant Director, Grants Monitoring Division, second posting), the position was never filled but was subsumed under the already-existing position of another employee. While the defendant hints that the cancellation and combination of the two positions occurred because the Grants Monitoring Division merged with the Compliance Division, *Defendant's Response to Plaintiff's Motion to Amend Complaint* at 3, the plaintiff points out that the employee under whom the position was subsumed was white. Thus, in effect, plaintiff has alleged that the positions remained open and were filled by members outside of her protected class–either after re-posting of the position or after merger with an already-existing position. By meeting all four prongs of the *McDonnell Douglas* analysis, she has established her *prima facie* case, and I will allow plaintiff to proceed on these two claims.

### 2. Failure to Assign Plaintiff to Temporary, "Acting" Management Positions

Defendant argues that the failure to assign plaintiff to several temporary, "acting" management positions is also non-actionable because it is akin to the denial

of a lateral transfer at issue in *Brown v. Brody.* There, the court reasoned:

[A] plaintiff who is made to undertake or denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies of personal preference are not sufficient to state an injury.

*Brown,* 199 F.3d at 457. Although defendant admits that the failure to designate plaintiff as acting Division Chief on two occasions has "theoretically hurt her prospects for advancement," it argues that such harm is not sufficiently tangible to qualify as an adverse action.[5] D. Reply at 3.

In response, plaintiff argues that the job vacancy cancellations, as well as the failure to detail her to temporary, "acting" management positions, qualify as adverse actions because they directly affect plaintiff's eligibility for future promotions. P. Opp. at 8.

■■■ The issue of whether plaintiff has stated a claim for the DOJ's alleged failure to assign her to an acting senior management position turns in some measure on how the action is defined. If the denial were classified as a failure to promote, plaintiff must allege, *inter alia,* that she applied for the position; that she was qual-

---

5. Defendant cites two cases from other districts in support of this position. First, in *Ruggieri v. Harrington,* 146 F.Supp.2d 202, 217 (E.D.N.Y.2001), the plaintiff was denied an opportunity to serve as department chair at St. John's University. The court found no adverse action, noting that the plaintiff's status as a tenured professor conferred no absolute entitlement to serve in this position. Similarly, in *Demuren v. Old Dominion Univ.,* 33 F.Supp.2d 469, 483–484 (E.D.Va.1999), *aff'd,* 188 F.3d 501 (4th Cir.1999), the court found no adverse action when the plaintiff, also a professor, was excluded from serving on the University's Dean Search Committee.

ified and that applicants were being sought for it; and that a member of a non-protected class was selected for the position. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If, as defendant urges, the action is classified as the denial of a lateral transfer, the claim must be dismissed unless plaintiff can allege some additional "materially adverse consequences affecting the terms, conditions or privileges of her employment or her future employment opportunities." *Brown*, 199 F.3d at 457.

 Plaintiff has not made out failure to promote claims regarding the March 28, 2000 assignment to Acting Assistant Director of the Grants Monitoring Division and the July 1, 2002 assignment to Acting Assistant Director of the Compliance Division because plaintiff has not alleged that she applied for either position before the "acting" designations were made. Plaintiff can, however, meet the standard for an adverse action for failure to assign her to a lateral transfer because she has alleged, and defendant concedes, that this failure could affect her future promotional opportunities. Accordingly, these claims do constitute a "tangible" change in plaintiff's employment status. *See Singletary v. District of Columbia*, 225 F.Supp.2d 43, 56–57 (D.D.C.2002). Therefore, plaintiff has stated a claim upon which relief can be granted in each of her failure to assign claims.

## B. Failure to Exhaust Administrative Remedies

 Title VII requires a federal employee who is alleging discrimination to proceed first before the agency charged with the discrimination. *Bayer v. U.S. Dep't. of Treasury*, 956 F.2d 330, 332 (D.C.Cir.1992). Under the regulations governing the administrative EEO complaint process, an aggrieved person is required to consult an agency EEO counselor within 45 days of the alleged discriminatory act, or, in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105. This 45–day requirement operates like a statute of limitations and may be tolled if the plaintiff pleads and proves equitable reasons for noncompliance. *Bayer*, 956 F.2d at 332–33.

Should the matter remain unresolved after informal counseling, the aggrieved person may file a formal discrimination complaint with the agency, which must be investigated and disposed of within the earlier of 180 days of the last amendment to the complaint or 360 days after the filing of the original complaint. 29 C.F.R. § 1614.105–106. If the aggrieved person is dissatisfied with the final disposition of his complaint, she may file a civil action within 30 days of receipt of the notice of final action by the agency. 42 U.S.C. § 2000e–16(c).[6]

Defendant asserts that plaintiff has failed to present, within the required 45 days, her claims relating to the March 2001 cancellation of the job vacancy announcement for Regional Assistant Director, Grants Monitoring or the July 2001 cancellation of the job vacancy announcement for Assistant Director, Grants Monitoring. D. Reply at 4. With respect to the July 2002 non-selection for the position of Acting Assistant Director, Compliance Division, defendant argues that although plaintiff sought counseling within the 45–day threshold, the claim is barred because there has been no final action by the agen-

---

**6.** All references to the United States Code are to the version that appears in Westlaw and Lexis.

cy.[7] Therefore, defendant contends that, to the extent that plaintiff's civil action is based on these claims, it must be dismissed.

Prior to 2002, courts could interpret administrative complaints alleging a pattern of ongoing discrimination to include subsequent, similar acts as long as the employer had notice that its actions were alleged to violate Title VII and the employer had been afforded an adequate opportunity to seek resolution with the aggrieved employee. *Loe v. Heckler*, 768 F.2d 409, 420 (D.C.Cir.1985). Allowing plaintiffs to proceed with such claims was especially sensible when plaintiffs alleged retaliation because they could bring the claims for the first time in federal court without having to re-initiate the administrative process and risk being retaliated against once again. Thus, a Title VII plaintiff who had exhausted her administrative remedy as to a claim of discrimination was not required to exhaust it again before presenting a judicial cause of action that she was retaliated against for filing that claim. *Harrison v. Rubin*, 174 F.3d 249, 254 (D.C.Cir. 1999); *Loe v. Heckler*, 768 F.2d 409, 420 (D.C.Cir.1985) (noting that "no purpose would be served by demanding a stream of further administrative pleadings"); *Bonds v. Heyman*, 950 F.Supp. 1202, 1208 (D.D.C.1997); *Webb v. District of Columbia*, 864 F.Supp. 175, 184 (D.D.C.1994) (stating that "to force an employee to return to the state agency and the EEOC every time he claims a new instance of discrimination in order to have the courts consider the subsequent incidents along with the original ones would 'erect a needless procedural barrier' ") (quoting *Oubi-*

*chon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)).

In 2002, however, the Supreme Court held that the Title VII statute of limitations "precludes recovery for discrete acts of discrimination *or retaliation* that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (emphasis added). The Court was clear in holding that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts [as opposed to hostile work environment claims] must file his charge within the appropriate time period." *Id.* at 122, 122 S.Ct. 2061. Given this clear directive, prior cases allowing plaintiffs to file subsequent, similar claims for the first time in federal court simply do not survive *Morgan*.

In this case, there is no dispute that plaintiff has failed to exhaust the administrative EEO process for the March 2001 cancellation of the Regional Assistant Director vacancy announcement, the July 2001 cancellation of the Assistant Director of Grants Monitoring vacancy announcement, and her non-selection for the position of Acting Assistant Director of the Compliance Division. As discussed earlier, plaintiff's claim regarding the March 2001 cancellation of the Regional Assistant Director vacancy announcement has already been dismissed because the position was never filled and plaintiff failed to make out a *prima facie* case under Title VII. The remaining two claims, each of which allege discrete discriminatory and retaliatory acts, are dismissed because the plaintiff

---

7. Defendant admits, however, that the following claims have been administratively exhausted: (1) the January 2000 non-selection for the Program Compliance Officer position; (2) the March 2000 failure to assign to the Acting Assistant Director, Grants Monitoring position; (3) the September 21, 2000 cancellation of the job vacancy for Assistant Director, Intergovernmental and Public Liaison; and (4) the September 26, 2000 cancellation of the job vacancy for Assistant Director, Grants Monitoring. D. Reply at 3–4.

clearly failed to exhaust her administrative remedies.

In *Morgan*, the Supreme Court also stated that discrete acts, even if time-barred, "may constitute relevant background evidence in a proceeding in which the status of the current practice is at issue. The emphasis, however, should not be placed on 'mere continuity' but on 'whether any present *violation* exists.'" *Morgan*, 536 U.S. at 112, 122 S.Ct. 2061.

▮ In this case, plaintiff argues that she has included her time-barred claims as background information to bolster the underlying discrimination claims for which she has timely filed. In response, the defendant claims that allowing these issues to be presented would cause unfair prejudice because the defendant would be forced to defend against acts not properly before the court. The defendant raises a legitimate concern. Even though *Morgan* establishes that a plaintiff *may* introduce these incidents as background information, she may do so only if she introduces these acts to demonstrate that the defendant violated the law when it engaged in actions properly submitted to the court for judicial resolution and if the probative value of that evidence exceeds its potential to waste time, confuse the jury, and unfairly prejudice the defendant. I will require the plaintiff to file a supplemental brief establishing the evidence meets that standard. Defendant may, of course, file an opposition.

## IV. CONCLUSION

For the reasons outlined above, plaintiff's claims arising out of her non-selection for the position of COPS Program Compliance Officer, the cancellation of Vacancy Announcement # 00–12–24001 (Assistant Director, Intergovernmental and Public Liaison Division), and the failure to assign her to Acting Assistant Director for Grants Monitoring are sufficient to state a claim upon which relief can be granted under Title VII and to meet the standards set forth in Fed.R.Civ.P. 56(c). Claims arising from the cancellations of Vacancy Announcement # 00–21–24001 (Assistant Director, Grants Monitoring) and Vacancy Announcement # 00–39–24001 (Regional Assistant Director, Grants Monitoring Division) will be dismissed for failure to state a claim upon which relief may be granted under Title VII. Finally, plaintiff may not proceed on the claims arising from the cancellation of Vacancy Announcement # 01–08–24001 (Assistant Director, Grants Monitoring Division, second posting) and from failure to assign her to the position of Acting Assistant Director for the Compliance Division because she has failed to exhaust her administrative remedies.

An Order accompanies this Memorandum Opinion.

## ORDER

Upon consideration of defendant's motion, plaintiff's opposition thereto, and defendant's reply thereto, and in accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that *Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint and/or, in the alternative, for Summary Judgment* [# 26] is **DENIED IN PART and GRANTED IN PART.**

**SO ORDERED.**