Elizabeth M. LESSMANN, Plaintiff,

v.

George J. TENET, Director, Central Intelligence Agency, Defendant.

No. CIV.A. 03–2589RMC.

United States District Court, District of Columbia.

Feb. 18, 2005.

Elizabeth M. Lessmann, Omaha, NE, pro se.

Jane M. Lyons, Carol Catherman, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Elizabeth M. Lessmann sues George J. Tenet, former Director of the Central Intelligence Agency ("CIA"), in his official capacity, for alleged gender discrimination arising out of an August 2002 interview for a position with the "Clandestine Service." Because Ms. Lessmann's discrimination charge was not timely filed with the CIA and because there is no basis for tolling the filing requirement, this case will be dismissed.

## BACKGROUND

Ms. Lessmann was interviewed for employment with the CIA in August 2002. She alleges that she became uncomfortable during the interview because she believed that she had attended graduate school with her interviewer's son and undergraduate school with her interviewer's nephew. *Compl.* at 2. Ms. Lessmann argues that she felt sexually harassed because her interviewer asked questions about his relatives, *id.* at 4, and she challenges "the [CIA's] present policy of assigning interviewers to applicants without applying a screening practice that would assure that the interviewer has no outside personal connection, family points of connection, previous knowledge of the applicant, or the appearance of previous knowledge or personal bias against an applicant," *id.* at 1.[1] Although Ms. Lessmann believes that her interviewer is related to two people she once knew (based on a "strong ... physical resemblance"), she acknowledges that she "cannot state for sure that my interviewer had pre-existing knowledge of me." *Id.* at 2.

Ms. Lessmann alleges that she was "romantically involved with [her] interviewer's nephew" and that the relationship ended "with hurt feelings on both sides." *Id.* at 3. Ms. Lessmann also asserts that she had a difficult experience with a friend of the "interviewer's nephew" after college. *Id.* In addition to this alleged relationship with her interviewer's nephew, Ms. Lessmann asserts that, in graduate school, her "reputation was damaged by rumors among ... graduate school classmates that [she] had a romantic interest in [her] interviewer's married son" and that she had a public altercation with her "interview[er]'s daughter-in-law." *Id.* "To summarize, I have deep, unresolved interpersonal problems with my interviewer's nephew, a slightly awkward situation with my interviewer's son, and a complete lack of understanding between my interviewer's daughter-in-law and myself." *Id.*

Because of her emotional distress during the interview, Ms. Lessmann "had difficulty articulating ... ideas" and "remembering facts from the initial group presentation," which adversely affected her "natural conversational warmth and candor ...." *Id.* She states that her interview was atypical because it was "more like a psychological evaluation." *Id.* at 6. Ms. Lessmann states that: "I strongly believe that I may have been under hypnosis during my interview." *Id.*

After her interview, Ms. Lessmann claims to have "had trouble concentrating at [her] job at the U.S. General Accounting Office." *Id.* at 7. These troubles contributed to problems at work and forced her to resign at the end of November 2003. *Id.* She believes that "Agency operatives in their professional capacities" interfered with her life by attending a Bryn Mawr College Book Club Meeting, an adult education fine arts class, and an Italian language class. *Id.* at 7–8. Ms. Lessmann alleges that the CIA must have searched her personal journal because she began to see its contents in movies, television shows and popular music. *Id.* at 8.

Ms. Lessmann seeks: 1) an order striking the results of her interview; 2) an order directing the CIA to "stop and permanently desist" from taking actions against her; 3) a monetary settlement "if the Agency did take action against me following my interview;" 4) money damages for the sexual harassment that led to

1.   Ms. Lessmann alleges that at her interview she: "projected the nephew onto my interviewer while my interviewer asked me very probing questions about every sensitive aspect of my past." Compl. at 6.

her emotional distress and affected her job at the General Accounting Office ("GAO"); 5) money damages for CIA "tactics of intimidation" after the interview; 6) an accounting for violation of her intellectual property; 7) return of personal journals that she believes were photographed by a colleague; 8) disclosure of damage the CIA has caused to her intellect; and 9) reimbursement for the costs of this suit. *Id.* at 11–14.

Ms. Lessmann submitted an Equal Employment Opportunity ("EEO") claim to the CIA EEO Office on September 15, 2003, identifying her August 7, 2002 job interview as the basis for her claim. Compl., Exh. 1. By letter dated September 30, 2003, the CIA dismissed the claim as untimely pursuant to 29 C.F.R. § 1614.107(a)(2), which requires an "aggrieved person" to contact the Agency within 45 days of an alleged act of discrimination. *Id.* ("The record shows that the matter you claim was discriminatory occurred on 7 August 2002, some eleven months prior to your contact with an EEO counselor. Therefore, your claim is untimely.").

Ms. Lessmann filed suit on December 19, 2003. The CIA filed a motion to dismiss or for a more definite statement on March 1, 2004 ("CIA Mem.") asserting that, because Ms. Lessmann's EEO charge was untimely, her lawsuit could not proceed. On May 5, 2004, the Court ordered Ms. Lessmann to respond to the motion to dismiss. She responded on May 28, 2004 asking the Court to allow her case to continue. The CIA filed its reply on June 3, 2004 renewing its argument that Ms. Lessmann's EEO charge was untimely.

Because Ms. Lessmann is proceeding *pro se,* the Court issued an Order to Show Cause on June 7, 2004 directing her to show cause why the 45–day requirement in 29 C.F.R. § 1614.107(a)(2) should be tolled.

Ms. Lessmann filed her response on June 29, 2004, to which the CIA filed a reply on July 15, 2004.

## LEGAL STANDARD

The CIA moves to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(6). "In considering a motion to dismiss for failure to state a cause of action, all factual allegations in the complaint must be taken as true and ambiguities and doubts must be resolved in favor of the pleaders." *Martin v. EPA,* 271 F.Supp.2d 38, 47 (D.D.C.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir.1985)). However, "[a] court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts." *Id.*

## ANALYSIS

■ Exhaustion of administrative remedies is generally a prerequisite to a civil suit for discrimination. *See Greene v. England,* 2004 WL 326716, at *1 (D.D.C. Feb.9, 2004) (discussing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e). As part of the administrative process, the underlying claim or events must be reported to the agency within 45 days of their occurrence. 29 C.F.R. § 1614.105(a)(1). The August 2002 interview between Ms. Lessmann and the CIA was a discrete event that would normally trigger her obligation to file a timely claim. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110–12, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

■ The requirement that a claim against a federal agency be brought to that agency within 45 days "operates like a

statute of limitations and may be tolled [only] if the plaintiff pleads and proves equitable reasons for noncompliance." *Bowie v. Ashcroft*, 283 F.Supp.2d 25, 33 (D.D.C.2003) (citing *Bayer v. Dep't of Treasury*, 956 F.2d 330, 332–33 (D.C.Cir. 1992)); *see also Jarmon v. Powell*, 208 F.Supp.2d 21, 24–25 (D.D.C.2002) (examining equitable tolling). Ms. Lessmann does not dispute this governing principle. She seeks, instead, to justify the delay. *See* Plaintiff's Response to Order to Show Cause ("Pltf.'s Response"). Ms. Lessmann argues that she failed to timely file an EEO charge within the 45–day period because she feared retaliation by the CIA. Pltf.'s Response at 1.

Within 45 days of her CIA interview, Ms. Lessmann became convinced that the CIA was involved in her Italian language class and was affecting the food in a local Italian restaurant. *Id.* While taking a basic drawing class, Ms. Lessmann states that "she knew that [her] classmates were from the [CIA] . . . by their demeanor and the overall tone of the class . . . very serious and emotionally cold, even dismissive." *Id.* at 10. She continues that she "knew that somehow, this man I knew in college had managed to involve, through his friends at the FBI and his uncle at the CIA, the national security administration of the United States of America in the life of a woman who [sic] he had once barely known." *Id.* at 11.

Ms. Lessmann alleges that, while working at GAO, she was "given a truth telling drug and subjected to . . . beta wave hypnosis . . . [which] is used by the [CIA] to modify behavior." *Id.* She came to believe that the drinking water at GAO contained a truth-telling drug and ceased drinking it. *Id.* at 7. Ms. Lessmann also became convinced that her direct supervisor was a "handler" for the CIA. *Id.* at 9.

After the initial 45–day period, Ms. Lessmann alleges that the CIA continued to be involved in her personal and professional life. *Id.* She believes that she was being harassed and intimidated after observing multiple people around her attired in symbolic colors. *Id.* at 13. She felt that she was under constant observation by persons on buses, subways, and airplanes. *Id.* at 14. Strange events occurred in her apartment and her sleep changed dramatically. *Id.* She experienced strange pains while at a spa and became fearful of visiting her doctor because he wore symbolic colors. *Id.* at 15. She continued to be fearful of foods served to her, which she attributes to the CIA "trying to suggest something to me." *Id.* Ms. Lessmann claims that the CIA attempted to switch her sexual orientation to homosexual. *Id.*

■ Ms. Lessmann's Response to the Order to Show Cause does not provide a sufficient basis for excusing her failure to file an administrative charge of discrimination within the 45–day period. Tolling a statute of limitations, which waives the sovereign immunity of the United States, should be exercised only in extraordinary and carefully-circumscribed instances such as where the federal agency itself has engaged in affirmative misconduct or given a claimant erroneous information. *Bowdre v. Richardson*, 131 F.Supp.2d 179, 185 (D.D.C.2001) (citing *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988)). The claims of CIA misconduct advanced by Ms. Lessmann are inherently incredible and do not warrant equitable tolling.

■ District courts have the authority to dismiss claims that are inherently incredible. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir.2000); *see Neitzke v. Williams*, 490 U.S. 319, 327–28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (dismissal appropriate

in claims "describing fantastic or delusional scenarios"); *Best v. Kelly,* 39 F.3d 328, 330–31 (D.C.Cir.1994) ("bizarre conspiracy theories" and other "fanciful claims" are appropriate for dismissal). The Court has evaluated Ms. Lessmann's claims and the defendant's responses and determined that the interests of justice do not require that the case be allowed to proceed.

## CONCLUSION

Ms. Lessmann has not provided a basis for tolling the 45–day filing requirement in 29 C.F.R. § 1614.105. Because her EEO charge was filed well beyond this period, the CIA's dismissal of it as untimely must be sustained. The complaint will be dismissed with prejudice. In light of this disposition, Ms. Lessmann's motion for appointment of counsel is denied. A separate order accompanies this memorandum opinion.